# Commonwealth, Appellant, v. Mortgage Trust Company of Pennsylvania.

*Taxation—Corporations—Trust companies—Capital stock—Tax on capital stock—Constitutional law—Apportionment of tax—Statutes—Repeal—Acts of March 30, 1811, 5 Sm. L. 228; June 8, 1891, P. L. 229, and June 13, 1907, P. L. 640.*

1. The Act of June 13, 1907, P. L. 640, relating to the taxation of the capital stock of trust companies, and providing that the actual value of each share of stock shall be determined by adding together the capital paid in, the surplus and undivided profits, and dividing the result by the whole number of shares outstanding, is a constitutional exercise of the taxing power of the state. The fact that the method of ascertaining the value of the shares does not take into account selling value on the stock exchange or in the open market is immaterial. The fact that the selling value is not included, is a legislative and not a judicial question.

2. The Act of June 13, 1907, P. L. 640, is not retroactive in its operation.

3. The Act of June 13, 1907, P. L. 640, which changed the method of determining the value of shares of stock issued by trust companies, was not intended by the legislature to release such corporations from liability to pay taxes which had accrued at the time of the passage of that act under the Act of June 8, 1891, P. L. 229, although the latter

act was repealed by the former, and the act of 1907 did not in express terms contain a saving clause reserving the right to collect such accrued taxes.

4. While the general rule is that when a statute is repealed without a saving clause, it is to be considered as though it never existed except as to transactions past and closed, the rule, like any other legal principle of general application, must be understood and applied, if at all, so as to give effect to the legislative intention. It is not so much what the general rule of construction is as what did the legislature intend by repealing all acts or parts of acts inconsistent with the new law.

5. A statute repealing former laws on the same subject does not abolish all rights and remedies under the repealed acts, if the legislative intent not to abolish them appears. This rule especially applies to acts which provide for the assessment and collection of annual taxes.

6. The Act of March 30, 1811, 5 Sm. L. 228, was in no way affected by the Acts of June 8, 1891, P. L. 229, and June 13, 1907, P. L. 640, and therefore the remedy provided by that act for the settlement and collection of taxes on the stock of trust companies was operative as to all such taxes as had accrued before the Act of June 13, 1907, P. L. 640, became operative.

7. It is competent for the taxing authorities of the commonwealth to apportion and assess a tax on the capital stock of trust companies for a period from the first Monday of November, 1906, to June 20, 1907, when the Act of June 13, 1907, became operative.

8. It is within the power of the accounting officers of the commonwealth in the first instance, or of the court on appeal in a proper case, to apportion state taxes on capital stock according to the time the stock is outstanding, or to determine the amount of tax due for that portion of the year for which taxes are claimed.

Argued May 24, 1909. Reargued Jan. 11, 1910. Appeal, No. 10, May T., 1909, by plaintiff, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1908, No. 446, for defendant on case tried by the court without a jury in suit of Commonwealth v. Mortgage Trust Company of Pennsylvania. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ., on reargument. Reversed.

Appeal from tax settlement.

The case was tried by the court without a jury under the Act of April 22, 1874, P. L. 108.

KUNKEL, P. J., found the facts to be as follows:

This is an appeal by the defendant corporation from the

settlement of the account against it by the auditor general and state treasurer for tax on capital stock for the period of seven and two-thirds months ending June 30, 1907, claimed to be due under the provisions of the Act of June 13, 1907, P. L. 640. It was tried by the court without a jury by agreement of the parties agreeably to the provisions of the act of April 22, 1874.

From the evidence in the case which is without conflict we find the facts to be as follows:

1. The Mortgage Trust Company of Pennsylvania, defendant, is a corporation of the state of Pennsylvania, chartered March 12, 1886, under the provisions of sec. 29 of the act approved April 29, 1874, and its supplements. It possesses the powers, and has been and is engaged in the business, of the class of corporations commonly known as title insurance or trust companies.

2. June 20, 1907, defendant, by its treasurer, made report to the auditor general, in a blank form prescribed by him, calling for such information as the act of June 13, 1907, requires. The report set forth that defendant's capital stock issued and paid in was $500,000, divided into 5,000 shares of the par value of $100 each; that the actual value of each share was $40.00, and that the defendant had no surplus or undivided profits. Attached to, and as part of, the report was a statement setting forth the ownership by the company of real estate outside of Pennsylvania; that the value of said real estate was uncertain, and that the company was indebted for overdue interest on debenture bonds in the sum of $236,927.08.

3. On October 31, 1907, the auditor general and state treasurer settled an account against defendant for a tax of five mills computed upon $500,000, set forth in the said account to be "actual value in cash of capital stock, as appraised or valued by the officers of the company, and assessed for taxation," which statement was, however, in error, as the valuation of $40.00 per share, returned by the officers of the company, would, for the whole 5,000 shares, amount in the aggregate to only $200,000. The sum of $500,000 was arrived at as the taxable basis by adding together the capital stock

paid in, the surplus and the undivided profits. There being no surplus or undivided profits, the total of $500,000 was just the amount of the capital stock paid in. The commonwealth's officers did not feel at liberty to go beyond that, to regard the valuation of $40.00 per share, put upon the stock by the officers of the company; to give consideration to the fact that it was indebted in the sum of $236,927 for overdue interest, or to attempt to ascertain the actual value of defendant's capital stock or shares. They felt themselves bound by the act of June 13, 1907, to treat the sum of the capital stock paid in, surplus and undivided profits as the taxable basis, regardless of any other factors or elements of value. Similar assessments were made against all other trust companies in the state.

4. In the account or settlement, tax was charged against defendant at the rate of five mills per annum upon $500,000 for seven and two-thirds months ending June 20, 1907, said tax amounting to $1,597.22. From this account so settled against it defendant appealed to this court.

5. Defendant had loaned large amounts of money on mortgages on real estate outside of Pennsylvania, and with those mortgages as security issued its own debenture bonds. Upon many of the mortgages the interest not having been paid, the company, under foreclosure proceedings, became the owner of the real estate. On June 20, 1907, defendant was indebted to the amount of $236,927.08 for overdue interest on outstanding debenture bonds which had been issued by it (the amount of debenture bonds does not appear from the evidence). Under an agreement between defendant and its bondholders the overdue interest is required to be paid before any dividends can be paid to stockholders. During the year ending the first Monday of November, 1906, the net earnings of the company were $4,061.03. The company had not, for a long time prior to June 20, 1907, any surplus fund or undivided profits, and has paid no dividends since May 21, 1896. There was one sale of twelve shares of stock in 1906 at $10.00 per share. The actual value of defendant's capital stock did not, during the period for which tax is claimed,

exceed $40.00 per share, or $200,000 in the aggregate, and except for the real estate which it owned outside of Pennsylvania, acquired by foreclosure of mortgage, its capital stock on June 20, 1907, would not, after deducting the deferred or overdue interest, have had any value whatever.

6. Although the method of computing actual value for taxation by adding together the amount of capital stock paid in, the surplus and undivided profits, as prescribed in the act of June 13, 1907, produces, in defendant's case, a result two and one-half times the actual value of its capital stock or shares, and in sundry other cases results in taxing capital stock or shares of similar corporations upon amounts largely in excess of actual value, it does in many other cases produce results very much below actual value; thus, the actual value of the capital stock of the Altoona Trust Company is $150 per share, but determined upon the basis prescribed by the statute the amount taxable is only $108.64 per share; the actual value of the capital stock of the Butler Savings & Trust Company is $310 per share, but the taxable basis only $258.05 per share; the actual value of the capital stock of the Commonwealth Trust Company of Harrisburg is $400 per share, while under the statute the taxable basis is only $329.90; the actual value of the capital stock of the Provident Life & Trust Company is $782 per share, while the taxable basis is only $548.28; in the case of the Union Trust Company of Pittsburg the actual value is $2,500 per share, while the result produced by adding together the capital stock paid in, the surplus and undivided profits, and dividing the total number of shares gives $1,611.91 as the taxable basis under the act of June 13, 1907.

7. The act of June 13, 1907, in prescribing that for purposes of taxation thereunder "the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares," provides a method of computation which, among companies subject to the act, produces results in most cases different, and in many cases widely different, from actual values.

8. In four cases, namely, those of the Pennsylvania Surety

Company, Quakertown Trust Company, Union Deposit & Trust Company, and Union Trust Company of Donora, the result reached by adding together the capital stock paid in, the surplus and undivided profits and dividing the amount by the number of shares, was identical with the actual value, as shown by the evidence.

In twenty-nine other cases there were variations of less than $1.00.

In eighty-seven cases the result reached by the statutory method of computation was materially greater than the actual value, the excess varying from five to 300 per cent.

In 100 cases the amount determined by the statutory method was from ten to fifty per cent less than the actual value.

9. Prior to the passage of the act of June 13, 1907, trust companies were, as most other corporations still are, taxed upon the actual value in cash of the capital stock, appraised as required by sec. 20 of the Act of June 1, 1889, P. L. 420, as amended in sec. 4 of the Act of June 8, 1891, P. L. 229. As shown by the figures prepared by the auditor general's department, in response to a resolution of the legislature, the loss to the commonwealth by determining the taxable amount by adding together the capital stock paid in, surplus and undivided profits and dividing the amount by the number of shares, as required by the act of June 13, 1907, is about $260,000 per annum as compared with the taxation of the trust companies upon the actual values of their capital stocks under the act of 1891, the rate of taxation being the same— five mills—under each act.

10. As $260,000 is the tax at five mills upon $5,200,000, it follows that the aggregate amount taxable under the act of June 13, 1907, arrived at by adding together the capital stock paid in, surplus and undivided profits, is about $5,200,000 less than the aggregate actual value of the capital stocks of the trust companies, although in the cases of this defendant and some other trust companies the amounts taxable are largely in excess of their actual values.

11. The arbitrary provision of the act of June 13, 1907, that

for the purpose of taxation thereunder "the actual value of each share of stock to be ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits and dividing this amount by the number of shares," omitting, as it does, from consideration the net earnings or income, or losses, the dividends, the price obtainable in the market, the indebtedness, the franchises, and other factors or items of relevant evidence usually considered in determining the actual value of capital stock or shares, results in producing tax bases widely at variance with the actual values, and the resulting taxes are unequal, unjust and not uniform.

12. As testified by the state official called by the commonwealth to testify in the case, the method of computing the actual value, as prescribed by the act of June 13, 1907, results in taxing the larger taxpaying trust companies upon valuations below the actual value of their shares and some of the smaller companies, like defendant, upon valuations in excess of the actual value of their shares.

13. Under earlier laws, where they felt free to ascertain the actual value of the capital stock, the state officers considered the indebtedness of a corporation, its dividends and its net earnings or losses as important factors to be considered in determining the actual value of the shares, but under the act of June 13, 1907, they do not feel at liberty to inquire into or regard those elements or factors of value.

On the facts found and as the result of the foregoing discussion we reach the following:

### CONCLUSIONS OF LAW.

1. As the arbitrary requirement of the Act of June 13, 1907, P. L. 640, that the actual value of the shares of stock for taxation shall be "ascertained and fixed by adding together the amount of capital stock paid in, the surplus and undivided profits, and dividing this amount by the number of shares" produces results so widely at variance with the actual values, sometimes more, sometimes less, that the resulting taxes are necessarily lacking in uniformity, and are unequal and unjust,

the act is violative of the mandate of sec. 1 of art. IX of the constitution of Pennsylvania that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws."

2. For the same reason the act is in conflict with that provision of the fourteenth amendment to the constitution of the United States which declares that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

3. Even if the act of 1907 can be considered a constitutional and valid enactment, it cannot be construed or held to impose or justify taxation for any period prior to June 13, 1907, the date of its approval by the governor.

4. In so far as the account settled by the auditor general and state treasurer includes a tax upon real estate, or capital stock of defendant invested in and representing real estate located, held and owned in states other than Pennsylvania, the said account and the tax charged therein are in violation of the fourteenth amendment to the constitution of the United States which provides that no state shall "deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

5. Judgment for defendant.

*Error assigned* was in dismissing exceptions to adjudication.

*Frederic W. Fleitz,* deputy attorney general, with him *J. E. B. Cunningham,* assistant deputy attorney general, and *M. Hampton Todd,* attorney general, for appellant on first argument.—The commonwealth contends that it is clearly within the power of the legislature to classify corporations for the purpose of taxation in any way, so long as the classification is a fair one, and the tax imposed is uniform upon the entire class.

This contention of the commonwealth has been repeatedly

upheld by the courts, in a long line of cases including Weber
v. Reinhard, 73 Pa. 370; Kittanning Coal Co. v. Com., 79 Pa.
100; Williamsport v. Brown, 84 Pa. 438; The Germania Life
Ins. Co. v. Com., 85 Pa. 513; Com. v. Delaware Div. Canal Co.,
123 Pa. 594; Com. v. Edgerton Coal Co., 164 Pa. 284.

*M. E. Olmsted*, with him *A. C. Stamm*, for appellee, on first
argument.—This court has never hesitated to enforce the con-
stitutional requirement of uniformity when occasion has re-
quired: Fox's App., 112 Pa. 337; Banger's App., 109 Pa. 79;
Rockhill Iron & Coal Co. v. Fulton County, 204 Pa. 44; Com.
v. Manor Gas Coal Co., 188 Pa. 195; Com. v. Lake Shore,
etc., R. R. Co., 3 Dauphin Co. Reps. 172.

The claim in suit is not authorized even by the act of 1907:
Taylor v. Mitchell, 57 Pa. 209; Dewart v. Purdy, 29 Pa. 113;
People's Fire Ins. Co. v. Hartshorne, 84 Pa. 453; Sproul v.
Standard Plate Glass Co., 201 Pa. 103; Com. v. Danville
Bessemer Co., 207 Pa. 302.

*John Hampton Barnes*, for Girard Trust Company and West
End Trust Company.

*John G. Johnson*, for The Pennsylvania Company for In-
surances on Lives and Granting Annuities.

*Reed, Smith, Shaw & Beal* and *Patterson, Sterrett & Acheson*,
for Union Trust Company, Fidelity Title & Trust Company,
Safe Deposit & Trust Company and Colonial Trust Company,
Guaranty Title & Trust Company, Pittsburg Trust Company,
Land Trust Company of Pittsburg, and Dollar Saving Fund
& Trust Company of Allegheny.

On June 22, 1909, the Supreme Court handed down an
opinion reversing the judgment of the court below with direc-
tions that it should hear the parties and determine the actual
value of the shares of stock in accordance with the opinion.
Thereafter the Mortgage Trust Company presented a petition
for the modification of the order in which it was set forth:

That the act of 1891, in so far as it imposed a tax on the

capital stock of trust companies, was absolutely and unconditionally repealed by the act of 1907, with no reservation whatever of any right to collect any taxes accrued thereunder.

That, for the fraction of the year covered by the account in controversy, no tax had accrued or was due under the act of 1891 at the time of its repeal.

That the act of 1891 did not require or authorize any valuation of the shares or capital stock of the petitioner, or of any other trust company, as of June 20, nor as of any date between the first Monday of November, 1906, and June 20, 1907, but the said act provided only for taxation upon appraisements and valuations made annually between the first and fifteenth days of November in each year.

That, as the claim of the commonwealth was based entirely upon the act of 1907, the question of liability under the act of 1891, after its repeal, was not argued through the assumption that the repeal contained the usual reservation for the collection of taxes accrued, or accruing; whereas, in point of fact, the act of 1891 was absolutely and unconditionally repealed with no reservation whatsoever.

The commonwealth filed an answer to this petition in which it was set up that the repeal of the act of 1891 by the act of 1907 took away no rights to collect the tax which had accrued for the portion of the year until the act of 1907 went into force, and the remedy for settling and collecting said tax remains under the act of 1811.

*A. C. Stamm,* with him *M. E. Olmsted,* for the petition upon reargument.—The appeal, which the act of 1811 gives to persons or bodies politic or corporate is not from an assessment or valuation of property, but from "the settlement of his, her or their account, by the Auditor General and State Treasurer." It has been repeatedly ruled that, upon such an appeal, if there be no authority of law for the tax charged in the account, or if it be not based upon a lawful assessment, the account must fall. The act of 1811 does not sustain such an account, unless there is other existing law for the foundation of the tax charged: Com. v. L. V. R. R. Co., 104 Pa. 89.

The act of 1891 was unconditionally repealed: Pacific & Atlantic Telegraph Co. v. Com., 66 Pa. 70; Philadelphia v. Kingsley, 5 Pa. C. C. Rep. 75; Com. v. Standard Oil Co., 101 Pa. 119; Com. v. Alliance Coal Mining Co., 13 W. N. C. 324.

Proceedings commenced under the provisions of a statute are arrested by the repeal of the statute: every act done towards their completion after the repeal is void: North Canal Street Road, 10 Watts, 351; Com. v. Standard Oil Co., 101 Pa. 119; Road in Hatfield Township, 4 Yeates, 392; Hampton v. Com., 19 Pa. 329; Key v. Goodwin, 4 Moore & Payne, 341; Endlich on the Interpretation of Statutes, secs. 478–479; Lewis' Sutherland Statutory Construction (2d ed.), sec. 282; Gurnee v. Patrick County, 137 U. S. 141 (11 Sup. Ct. Repr. 34).

*Wm. M. Hargest,* assistant deputy attorney general, with him *J. E. B. Cunningham,* deputy attorney general, and *M. Hampton Todd,* attorney general, contra.—The commonwealth contends:

1. That the act of 1891, so far as it relates to trust companies, was in force until the passage of the act of 1907, to wit, June 13, 1907, and the tax for the portion of the year from November 1, 1906, to June 13, 1907, is due.

2. That while the commonwealth cannot use the method of settling and collecting the tax afforded by the act of 1891, because it has been repealed, yet the tax itself accrued, and the act of 1811 supplies the proceeding for its collection and, therefore, the order of this court remitting the case to the court of common pleas of Dauphin county is proper, and admits, under the law, of no modification.

The accounting officers, in making the valuation are guided, not bound, by any report or valuation of the company.

When the appeal brings the issue into the court of common pleas, the whole case comes de novo: Com. v. R. R. Co., 3 Luz. Leg. Obs. 147; Com. v. Ry. Co., 2 Pearson, 380; Com. v. Easton Bank, 10 Pa. 442.

An act repealing former laws upon the same subject, does not abolish all claims and remedies under the repealed statute, if it appear that the intent was not to abolish them. This is

especially so where the repealing act continues the same system under new regulations: Telegraph Co. v. Com., 66 Pa. 70, as reported in 3 Brews. 517; Hickory Tree Road Case, 43 Pa. 139.

The tax is apportionable: Com. v. R. R. Co., 3 Luz. Leg. Obs. 147; Com. v. Atlantic Refining Co., 7 Dauphin County, 189; Ebervale Coal Co. v. Com., 91 Pa. 47.

The intention of the legislature is a controlling factor in the construction of this statute: Pacific & Atlantic Telegraph Company v. Com., 66 Pa. 70; 3 Brewster, 517; Hickory Tree Road Case, 43 Pa. 143; Wright v. Oakley, 46 Mass. 400; Com. v. Alliance Coal Mining Co., 13 W. N. C. 324.

OPINION BY MR. JUSTICE ELKIN, June 22, 1909:

The tax settlement in this case is for that part of the fiscal year extending from the first Monday of November, 1906, to June 20, 1907. The principal contention of the appellee company in the court below and here is that the Act of June 13, 1907, P. L. 640, taxing the shares of capital stock of trust companies, violates sec. 1 of art. IX of the constitution, which provides that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. The learned court below after giving the parties a patient hearing and the case intelligent and exhaustive consideration held the act to be unconstitutional. We, however, cannot agree with the views expressed on the controlling questions involved, nor with the conclusion reached. The act of 1907 is a revenue measure and provides for the levying of a tax upon the shares of stock of what are popularly known as trust companies. A brief recital of the legislative history of these companies and of the policy of the state in taxing their capital stock, together with an understanding of the basis for ascertaining the actual value of shares of stock in banking institutions proper, will be helpful in the consideration of the questions here raised. What are known as trust companies are incorporated under the general corporation act of 1874, and the original purpose for which they were created was to engage in the business of title insurance. In 1881, the legislature

broadened the scope and character of their business, and in 1889 the statutory door was more widely opened to this class of corporations. They grew in public favor until the legislature in 1895 conferred upon them the power to receive moneys on deposit and issue their obligations therefor, to invest their funds in and to purchase real and personal securities, and to loan money on real and personal securities. While these acts in express language denied to companies so incorporated the right to engage in the business of banking, they were in fact authorized to do some of the things for which banks are organized. It is true they are not banks of issue, nor of discount and deposit, in the technical sense, yet in the commercial world their transactions are regarded as in the nature of banking business. The policy of the commonwealth for more than twenty years was to tax the capital stock of these companies in the same manner as other corporations created under the general corporation act of 1874 were taxed. They made their reports to the auditor general under the general revenue acts of 1879, 1889 and 1891, and other statutes, just as other private corporations did, and the valuation of their capital stock was ascertained and the tax settlement made upon the same basis. This method of taxing the capital stock of these institutions continued in force until the act of 1907 was passed. As the trust company business grew in magnitude, as it did grow after the passage of the act of 1895 which conferred quasi banking privileges, the question of the proper method of taxing the capital stock of these corporations frequently arose. It was contended in their behalf that banks were their natural competitors; that their business partook of the nature of banking; and that they should be taxed in like manner. As a result of this feeling and the agitation which followed it the act of 1907 was passed. It is apparent that the legislature intended to tax trust companies on the same basis as banks. In this connection it will be helpful to consider the policy of the commonwealth in taxing bank stocks. The old acts of 1850, 1867, 1868, 1869 and 1870, relating to the taxation of banks and shares of stock in banking institutions were superseded by the act of 1891, which provided that any bank or savings institu-

tion incorporated by this state or by the United States may collect from its shareholders and pay into the state treasury a tax of eight mills on the par value of its shares in lieu of all taxation except upon its real estate; and upon failure to so elect to pay a tax upon the par value as above indicated, it shall be subject to a tax of four mills upon the actual value of its shares of capital stock without any exemption. This act provided alternative methods of levying a tax on bank shares. In its practical operation it produced great inequality of burden as applied to different banking institutions. Several national banks in the city of Pittsburg raised the question of its constitutionality before the auditor general and afterwards in the courts on the ground that it was repugnant to that provision of the constitution which requires taxes to be uniform upon the same class of subjects. When that case was heard before the court of common pleas in Dauphin county the evidence produced showed many inequalities upon the basis of what was considered the actual value of the shares of stock in different banking institutions. Notwithstanding these inequalities this court held the act to be valid and the taxes levied thereunder to be uniform within the meaning of the constitution: Com. v. Merchants', etc., Nat. Bank, 168 Pa. 309. That case was appealed to the supreme court of the United States, and every question argued in the court below and pressed here in the case at bar was then raised and considered with the result that the judgment of this court was affirmed: Merchants', etc., Nat. Bank v. Pennsylvania, 167 U. S. 461. It is true, these cases arose under the act of 1891, which was repealed by the act of 1897. The latter act, remedial in character, was intended to correct some of the inequalities about which complaint was made in the case above cited. The tax rate of four mills on the actual value of the shares of stock was not changed by the act of 1897, but a definite method of ascertaining the actual value of each share was provided, which method consisted in adding together the amount of capital paid in, the surplus and undivided profits and dividing the amount so ascertained by the number of shares. Each bank, however, had the right to elect to collect annually

from its stockholders a tax of ten mills on the par value of its share in lieu of all other taxes, except upon real estate. The act of 1897 increased the tax rate from eight to ten mills on all banks electing to pay on the par value of their shares, but the tax rate on the actual value of the shares of those banks not electing to pay on par value remained the same as under the act of 1891. All this was done to make more nearly uniform the taxes paid by banks under this method of taxation and to correct to some extent the inequalities complained of under the old act. Certainly the inequalities of burden are not so great under the act of 1897 as they were under the act of 1891, and since that act stood the constitutional test in all the courts, it would seem as though the later act should be reasonably secure from attack on the ground indicated.

The act of 1907 under which the tax is claimed in the present case, makes what is commonly known as trust companies, a class of corporations for the purpose of taxation, and substantially re-enacts the provisions of the act of 1897, as the basis of determining the valuation of the shares of capital stock. The act of 1907 provides, as does the act of 1897, that the actual value of each share of stock shall be ascertained and fixed for the purpose of taxation by adding together the amount of capital paid in, the surplus and undivided profits and dividing this amount by the number of shares. Every argument made against the act of 1907, could as well be made against the act of 1897, which for a period of twelve years has remained unchallenged as the basis for taxing shares of bank stocks. The power of the legislature to make trust companies a class for the purpose of taxation is conceded, as indeed it must be, under the rule of our cases. The power to classify being conceded, our only concern in the present case is to determine whether the method of taxing the shares of trust company stocks under the act of 1907 is uniform upon this class of subjects. This exact question as applied to bank stocks was settled in the bank case above referred to in favor of the commonwealth and against the contention made by the appellee here. The constitutional mandate only requires taxes to be uniform upon the same class of subjects. The

legislature has the power to classify taxable subjects within reasonable limits, to fix the tax rate and to provide a method by which to ascertain the taxable value in each particular class. This power was exercised in 1907 by making trust companies a class for the purpose of taxation, and a uniform tax rate and method of ascertaining taxable value applicable to the entire class were provided in that act. The method provided for ascertaining the value of shares of stock, the kind and character of the report to be made to the auditor general, the penalty for making a false return or no return, and the rate of taxation, apply to all trust companies incorporated and doing business under the laws of the commonwealth. Up to this point at least the constitutional injunction that all taxes shall be uniform upon the same class of subjects has been fully met by this act. The only complaint that can be made, and it has been made with great force and ability by the learned counsel for the appellee, is that the statutory method of determining the actual value of the shares in practical operation produces such inequality of burden as to offend against the constitutional provision requiring uniformity. We think this is no longer an open question in Pennsylvania. It was finally settled in the bank case above cited fourteen years ago. It is true, the act of 1891 under which that case arose did not provide a definite method of ascertaining the actual value of shares of stock, but it is equally true that the alternative method therein provided, did produce greater inequality of burden than anything complained of in the case at bar. The contention then made was, and it now is, that the taxes levied were not uniform, because as measured by the actual value of the shares of stock upon which the settlement was made great inequality of burden resulted. This court pointed out in that case that the inequalities complained of were due to causes that the legislature could not be required to foresee and provide against. The act was held to be a valid exercise of legislative power because the tax rates and methods of determining taxable value were uniformly applied notwithstanding the inequalities of results. The legislature has the general power to fix the valuation of shares of stock for the

purpose of taxation upon the basis of actual value to be ascertained by including all elements of value, or of general market value, or of selling value between particular dates, or real intrinsic value based upon assets and earnings, or upon any other uniform basis of valuation applicable to each member of the class. We can see no reason why the legislature may not definitely provide a method to determine how the taxable value shall be ascertained. The act of 1907 provides that the actual value of each share of stock shall be determined by adding together the capital paid in, the surplus and undivided profits and dividing the result thus obtained by the whole number of shares issued and outstanding. It is doubtful whether any better method of ascertaining the real intrinsic actual value of the shares could be adopted. It has the advantage of being a definite fixed basis sustained by business experience, and in most instances is the surest test of the real value of the shares. It does not take into account selling value on the stock exchange or in the open market, and this fact is strongly urged against the act, but it was within the power of the legislature either to include or exclude such selling value as an element to be considered in ascertaining taxable value. In this instance selling value was not included, which in our view of the law is a legislative and not a judicial question. Some confusion has arisen in the consideration of the present case by making comparison between the method of ascertaining the actual value of shares of stock under the general revenue act of 1891 and the method provided in the act of 1907. A little reflection will show the error of such comparison. The act of 1891 did provide for the taxation of the shares of capital stock of corporations on the basis of actual value, and indicated the elements to be considered in ascertaining that value. Courts in construing this and other similar acts have said the legislative intention voiced therein was to require the accounting officers in ascertaining the taxable value to take into consideration all necessary elements of value, such as dividends, profits, earning power, indebtedness, value of franchise and market price. But the courts have done nothing more than to define and limit the powers of the legis-

lature under the constitution. It is the duty of the legislature to fix a uniform tax rate and to provide a uniform method of valuation, and this was done in the act of 1907. The act of 1891 provides what elements shall be considered in ascertaining the actual value of shares of stock, and the courts have enforced the statutory requirements. The legislature, in 1907, made a new class of taxable subjects and provided in express terms a definite method of determining the actual value of the shares of stock belonging to this taxable class. It is likewise the duty of the courts to enforce this act according to its provisions, unless the constitution forbids. As has been hereinbefore stated the inequality of burden complained of is not sufficient to justify the striking down of the act. The inequalities elaborated in the court below and dwelt upon here depend upon what basis is taken for fixing the actual value of the shares. If the actual value of all the shares of a particular corporation is to be ascertained upon the basis of what a few shares may sell for in the stock market, in some instances to make a fictitious value in others for speculative purposes and in still others to obtain corporate control, of course great inequality may be figured out upon such bases. It is apparent from the record in this case that it was sales of this character that were largely considered in speaking of the actual value of the shares. Such sales are unreliable and unsatisfactory in determining real fixed actual value. As applied to trust companies generally, it is a reasonable assumption, based upon sound business judgment, that the actual intrinsic value of the shares of stock of every such institution is best measured by the amount of capital paid in, the surplus and the undivided profits. This is the basis adopted by the legislature for ascertaining the actual value of the shares of stock for the purposes of taxation in the act of 1907.

The inequalities of taxable burden upon which the learned counsel for appellee rely to have this act declared unconstitutional are no greater, indeed not so great, as in Com. v. Canal Co., 123 Pa. 594, or in Com. v. Brush Electric Light Co., 145 Pa. 147. In both of these cases this court held the acts under which the taxes were imposed to be a valid exercise of legis-

lative power and not repugnant to the constitutional require-
ment as to uniformity. The authority of these cases has
always been recognized and followed. There has been no
departure from the principle therein laid down although the
question has been frequently raised. To affirm the judgment
entered by the court below would mean the overruling of these
cases and would in effect declare the act of 1897 invalid for the
same reason. Nothing but imperative constitutional necessity
would warrant such a sweeping result, and we are not con-
vinced that there is any such necessity.

The question has been raised whether the act of 1907 was
in force during the period for which taxes are claimed in the
present case. We agree in this respect with the contention
of the learned counsel for appellee, which is, that the act of
1907 was not intended to be, and is not, retroactive in its
operation. It was not in force during the period for which
taxes are claimed under the settlement made in the case at bar.
However, this is not an insurmountable difficulty for the com-
monwealth. It is perfectly clear that the old law was in force
until the new act became operative, and either the old law or
the new act covers the period in question. In point of fact,
however, the act of 1891 was in force during the entire period,
and the actual value of the shares should have been ascer-
tained as required by that act. There is nothing on the face of
the record to show under what authority the tax settlement
was made. On appeal from the settlement made by the ac-
counting officers of the commonwealth it was the duty of the
court to determine the valuation of the shares of stock under
the law in force during the period for which taxes are claimed.
When, therefore, the record is remitted the court below can
proceed to hear and determine the proper valuation of the
shares of capital stock under the act of 1891.

Judgment reversed and record remitted with directions to
the court below to hear the parties and determine the actual
value of the shares of stock as above indicated.


OPINION BY MR. JUSTICE ELKIN, February 14, 1910:
After the opinion had been handed down and the record re-

mitted directing the court below to proceed to determine the valuation of the shares of stock of appellant corporation under the law in force when the act of 1907 went into effect, application was made to this court for a rehearing upon the question whether a tax settlement can be made under the act of 1891 for the period in question and the amount in taxes so ascertained can be collected after the repeal of the statute.

This question was not argued when the case was first presented and the court concluded to withhold the opinion and to grant a rehearing on the single question thus raised. Additional briefs have been filed, oral arguments made, and the exact question raised is now before us for decision. It is contended for appellant that the act of 1907 unconditionally repealed all prior acts or parts of acts relating to the valuation for taxation purposes of the shares of capital stock issued by trust companies, and that the commonwealth having failed to expressly reserve the right to collect taxes which had accrued under the repealed statutes during the period before the new law became operative has lost its right to collect such taxes at all. In other words, that the repeal of the old law without a saving clause in the new act reserving the right to collect taxes accrued at the time of the repeal, releases such corporations from liability for the taxes thus accrued but not paid. No doubt the general rule is that when a statute is repealed without a saving clause, it is to be considered as though it had never existed except as to transactions past and closed. The rule, however, like any other legal principle of general application must be understood and applied, if at all, so as to give effect to the legislative intention. It is not so much what the general rule of construction is as what did the legislature intend by repealing all acts or parts of acts inconsistent with the new law which did not abolish taxation on this particular class of corporations but only provided a different method of ascertaining the taxable value. It certainly cannot be seriously contended that when the legislature passed the act of 1907, which only changed the method of determining the value of shares of stock issued by trust companies, it was intended to release these same corporations from liability to pay taxes

which had accrued at that time. The only rational interpretation of the legislative intention as expressed in the statute is that the taxation of such shares of stock should continue after the passage of the act as it had existed for many years prior to that time except as to the basis of valuation. The act of 1907 did not provide a new system of taxation, nor did it introduce new taxable subjects. It was a revenue statute and was not intended to defeat the right of the commonwealth to collect her taxes. We think the sound rule is, especially as to acts which provide for the assessment and collection of annual taxes, that a statute repealing former laws on the same subject does not abolish all rights and remedies under the repealed acts, if the legislative intent not to abolish them appears. This view of the law finds ample support in Hickory Tree Road, 43 Pa. 139; Telegraph Company v. Com., 66 Pa. 70, and Wright v. Oakley, 46 Mass. 400. The learned counsel for appellant rely on Com. v. Standard Oil Co., 101 Pa. 119, to support the contention that no tax can be collected in the present case because of the repealing clause of the act of 1907. It is true that this case gives some color to this contention, but what was there said must be understood to have reference to the particular facts under which the right to collect a penalty was asserted. The commonwealth claimed a penalty from the corporation, and this court pointed out that the penalty had been repealed by subsequent legislation and that while the subsequent act expressly reserved the right to collect all taxes accrued under former statutes, no such reservation was made as to the penalty. From this it was argued, and this court so held, that the legislative intention to release from the liability to pay such penalty appeared in the act itself when it reserved the right to collect the taxes but not the penalties. Even that case was put upon the ground of legislative intention. In the case at bar the legislative intent to release from the payment of accrued taxes does not appear, and we think it is clear nothing of the kind was intended.

There are additional reasons why the case at bar should not be considered within the rule contended for by appellant. The accounting officers of the commonwealth in making settle-

ments of taxes against corporations derive their authority from the act of 1811 which has been in force for almost a century. It was in force during the period for which taxes are claimed, and is still in force. The right of appeal is given under this act, and the jurisdiction of the court to hear and determine the questions raised is conferred by the same act. This act was in no way affected by the acts of 1891 and 1907, so that the remedy for the settlement and collection of the tax in question as well as all other taxes was not changed, or modified or repealed. The remedy has remained undisturbed by any subsequent legislation. When the case came into the court below on appeal from the settlement made by the accounting officers, the whole proceeding was de novo. The court then had the power to hear and determine the questions raised and fix the valuation of the shares of stock according to the method of ascertaining that value provided by law. The case therefore being before the court on appeal under an act still in force, we think the power of the court to hear the case and to determine the valuation of the shares of stock according to the method fixed by the law in force during the period for which taxes are claimed is not open to serious question in view of what has been hereinbefore stated in reference to the repealing clause.

The question has been raised whether this annual tax can be apportioned so as to be collected for a fractional part of the year. The established practice is to treat taxes of this character as apportionable when the equities or necessities of the case so require. We can see no legal objection to this method of procedure, especially in view of the fact that the tax is imposed "at the rate of five mills upon each dollar of the actual value of its capital stock." There is much force in the argument of learned counsel for the commonwealth that when in a contract it is provided that interest shall be paid "at the rate of six per cent per annum," it means that interest shall only be paid at that rate for the fractional part of the year when the contract was in force. It frequently happens that corporations are formed in the middle or near the close of a fiscal year, and it is apparent that in such cases the commonwealth should not lose the tax for that part of the year

during which the capital stock was outstanding, and it would be unfair to impose the tax for the whole year upon a corporation which was in existence only for a few months. This is why the practice has grown up of apportioning the tax to the time the capital stock was outstanding. This practice is founded on equitable principles and just considerations, and we can see no legal reason why it should be disturbed. It is within the power of the accounting officers of the commonwealth in the first instance, or of the court on appeal in a proper case, to apportion the tax according to the time the stock is outstanding, or to determine the amount of tax due for that portion of the year for which taxes are claimed.

After due consideration we have concluded that the court has the power to ascertain the value of the shares upon the basis indicated in our first opinion and that the order then made should not be disturbed. Record remitted so that the value of the shares may be ascertained according to the views hereinbefore expressed.