## Shultz v. O'Neill

*Lee B. Lansberry* and *Walter W. Jackson*, for plaintiffs.

*William J. Carlin*, for defendants.

BIESTER, P. J., February 20, 1959.—This matter is before the chancellor as the result of the filing of two bills in equity, one of which being a class action, attacking an ordinance of the Township of Bristol, this county, imposing a tax of $15 per annum "upon the

privilege of using for profit within the Township of Bristol, any vending machine, jukebox or mechanical amusement device" as therein defined. The tax is required to be paid "by the persons owning and/or operating the establishment in which such device is installed or located for use." That phase of the ordinance dealing with amusement devices and jukeboxes is not before the court, the subject of the attack being the tax upon vending machines. . . .

### Discussion

As stated in the findings of fact, the ordinance in question is imposed under the authority of the Tax Anything Act of June 25, 1947, P. L. 1145, 53 PS §6851. Under the terms of the ordinance vending machines "shall mean any machine which, upon the insertion of a coin, slug, token, plate, disc or key, emits an article of merchandise. This term shall include, but shall not be limited to the following type machines: peanut vending machines; beverage vending machines; cigarette vending machines; bread vending machines; milk vending machines; candy vending machines; ice vending machines; and other similar type machines".

The tax of $15 a calendar year, or a portion thereof, is required to be paid prior to the use of the machine or device and no deduction or refund is permissible for the use of a machine for less than a full calendar year or "in case of any device being destroyed, sold or otherwise disposed of, or transferred out of the Township of Bristol, after the payment of such tax". The payment of the tax for each machine is to be evidenced by tag or certificate attached to the machine.

Although there are two separate cases before us, the attack upon the ordinance is of the same nature in both cases and the arguments and briefs submitted are completely consistent. The basis of the attack is the alleged lack of uniformity of the tax and its alleged discrimi-

natory and confiscatory nature. That is to say, the ordinance is said to be violatory of article IX, sec. 1, of the Constitution of Pennsylvania which provides "all taxes shall be uniform, upon the same class of subjects within the territorial limits of the authority levying the tax". . . .

Neither the research of counsel, nor that of the chancellor, has revealed any decisions of either of our appellate courts dealing specifically with the problem here before us. Three lower court opinions, to wit, Automatic Vending Sales Company v. City of Johnstown, 19 D. & C. 474 (1933); Commonwealth ex rel. v. Bradley, 40 D. & C. 584 (1940); and Cambridge Springs Borough v. Kineston, 84 D. & C. 110 (1952), all arrive at the conclusion that a tax similar to the one here imposed is in conflict with the Constitution of Pennsylvania and therefore invalid. True, such cases were not decided under the provisions of the Tax Anything Act and there are some distinctions between those cases and the ones presently before us. Nevertheless, the rationale of those cases and especially that of Commonwealth ex rel. v. Bradley strongly supports the position taken by plaintiffs in the present case. Thus in Commonwealth ex rel. v. Bradley, Judge Soffel, in a lengthy and carefully considered opinion, quotes at length from the case of In Re Application of Richardson, 170 Cal. 68, 148 Pac. 213 (1915), which held invalid a tax on vending machines levied by an ordinance of the City of San Francisco. In that case the court said, on page 73:

"The license-tax attempted is one solely on his *mode* of making his sales and deliveries, without any reference whatever to the amount of business done. If he uses such a machine, or machines, for that purpose, he must pay a license-tax of two dollars per annum for each machine so used. If he sells and delivers the very same merchandise in any other manner, he is not

required to pay any license-tax at all. It is elementary that there must be equality and uniformity in the imposition of license-taxes for revenue purposes, and that any classification providing different changes for those engaged in the same business, a charge for some and exemption for the others, must be one founded upon some natural and reasonable distinction pertinent to the matter. So, different charges may be imposed on those engaged in the same business, proportioned to the amount of business done, estimated in many different ways [citing cases], and this is the usual basis of any difference in the amount of charge on those engaged in the same business. But, and we are now speaking solely of revenue taxes, we know of no principle that warrants the imposition of a tax on some of those engaged in a certain business solely because of the method they use in making their sales and deliveries, and the exemption of all engaged in the very same business who do not use that method. We are speaking, of course, of methods not involving any occupancy or use of public property, such, for instance, as the use by wagons of a public highway. A tax thus imposed is really one solely on the method used by the merchant, and not on the business, a tax of the same nature as would be one imposed on a tradesman solely because of his use in making sales of such articles as a computing scale, a cash register, a cash carrier or some other such modern device. A difference in such mere methods of making sales and deliveries does not furnish a proper basis for classification of vendors of merchandise. . . ."

We must agree that such expressions as the above are persuasive. Nevertheless, after a careful consideration of the whole problem we have arrived at a different conclusion.

The Tax Anything Act, which since its enactment has been before our courts for various reasons and on

a number of occasions, confers upon political sub-divisions the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax, but which it does not tax or license, except as to certain restrictions and limitations imposed by the act itself. The limitation as to such matters as are now before us is that such local authorities shall not have such authority by virtue of the act, "except on sales of admission to places of amusement or on sales or other transfers of title or possession of property, to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a state tax." It appears to the chancellor that it is implicit in such phraseology that the municipality, subject to the limitations therein expressed, does have the authority to levy, assess or collect a tax on the privilege of employing tangible property.

There are certain fundamental concepts which must be borne in mind in passing upon the question of the application of article IX, sec. 1, as it affects a particular tax. One premise that is well established is that classification is a legislative question subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the court cannot declare the classification void, although they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification. That is to say, the reasonableness of the classification is for the legislature or the municipality in the first instance. It is only where there is no rational basis for it that the courts will interfere: Knisely v. Cotterel, 196 Pa. 614; National Transit Company v. Boardman, 328 Pa. 450, 456; American Stores Company v. Boardman; 336 Pa. 36, 40; Dole

v. Philadelphia, 337 Pa. 375, 389: Commonwealth v. Pennsylvania Threshermen and Farmers' Mutual Casualty Ins. Co., 339 Pa. 62, 64; Dufour v. Maize, 358 Pa. 309, 313, 317; Sablosky v. Messner, 372 Pa. 47, 57-58; Donnelly Estate, 113 Pa. Superior Ct. 274, 277; Philadelphia Association of Linen Suppliers v. Philadelphia, 139 Pa. Superior Ct. 560, 567.

Then too, an act of assembly should not be declared constitutionally deficient unless it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the minds of the court: Heisler v. Thomas Colliery Co., 274 Pa. 448, 458; American Stores Company v. Boardman, supra; Coe v. Duffield, 185 Pa. Superior Ct. 532, 534. Although this presumption of constitutionality of a resolution or ordinance is not as strong as that of an act passed by the legislature, nevertheless, where a reasonable interpretation can be adopted which will sanction the constitutionality of a resolution or an ordinance, it is the court's duty to adopt it: Allentown School District Mercantile Tax Case, 370 Pa. 161, 166.

Thirdly, the fact that a statute discriminates in favor of a certain class does not make it arbitrary if the discrimination is founded upon a reasonable distinction: Commonwealth v. Girard Life Insurance Co., 305 Pa. 558; Donnelly Estate, supra; Commonwealth v. McCarthy, 332 Pa. 465; Tax Review Board v. C. J. Devine & Co., 184 Pa. Superior Ct. 297, 301. That is to say, mere competition alone between taxpayers does not negate the right of the legislature to classify and tax differently: Commonwealth v. Lukens, 312 Pa. 220, 226; Tax Review Board v. C. J. Devine & Co., supra.

Many of the cases dealing with the general subject of permissible distinctions for classification are correlated in the case of Coe v. Duffield, supra. In that case an amusement tax was imposed by the school

district of the Township of Franklin, Greene County, imposing a tax of $25 per annum upon pinball machines and 10 percent upon admissions to drive-in theaters and roller skating rinks. It was the contention of the owners of the drive-in theaters and roller skating rinks that the tax was discriminatory in that other forms of amusement were not made subject to the tax involved. The court therein cites a number of cases in which it might be said that the effect of the tax was discriminatory, but neverethless the tax was not found to be offensive to the Constitution. The court therein said, at page 537:

"The courts have sustained the classification for tax purposes of the strip mining of coal from the deep mining of coal, and also from the similar mining or quarrying of other substances. Dufour v. Maize, 358 Pa. 309, 313, 319, 56 A. 2d 675 (1948); Dunkard Twp. School Tax Case, 359 Pa. 605, 610, 60 A. 2d 39 (1948). Life insurance companies have been legally classified into stock and mutual companies for the purpose of taxation. Commonwealth v. Girard Life Insurance Co., supra, 305 Pa. 558, 158 A. 262 (1932). Retailers and wholesalers have been taxed differently without offending the Constitution. Knisely v. Cotterel, 196 Pa. 614, 46 A. 861 (1900); Allentown School District Mercantile Tax Case, supra, 370 Pa. 161, 87 A. 2d 480 (1952). Classification has been upheld between corporate owners of taxicabs and individual owners; Commonwealth v. Quaker City Cab Co., 287 Pa. 161, 134 A. 404 (1926); reversed on another point in Quaker City Cab Co. v. Pa., 277 U. S. 389, 48 S. Ct. 553, 72 L. Ed. 927, foreign insurance companies and domestic insurance companies, Germania Life Insurance Co. v. Commonwealth, 85 Pa. 513 (1877); money owed by individuals and money owed by corporations, Fox's App., 112 Pa. 337, 4 A. 149 (1886); stock in trust companies and stock in other associations, Com-

monwealth v. Mortgage Trust Co., 227 Pa. 163, 177, 76 A. 5 (1909). An ordinance imposing a tax upon the gross receipts of open parking lots, but not upon enclosed parking places was upheld in Philadelphia v. Samuels, 338 Pa. 321, 12 A. 2d 79 (1940) as a constitutional classification.

"In Commonwealth v. McCarthy, 332 Pa. 465, 3 A. 2d 267 (1938), the Court upheld as a constitutional classification a mercantile license tax which was imposed upon persons engaged in operating bowling alleys and billiard tables. Not only were the operators of these forms of amusement classified separately from the operators of all other types of amusements, but the operators of the bowling alleys and billiard tables were classified into those who maintained summer resorts and those who did not, and the two groups were taxed differently."

The basic argument advanced by plaintiffs is to the effect that such a tax as the one imposed is inequitable in its application, because, in effect, it discriminates against a method or mode of transacting business and it must be agreed that if one conducts his business, in part, by the use of an automatic vending machine, he must pay a tax, whereas another person engaged in precisely the same business does not pay the same tax if he does not have the machine, although he may, in fact, sell the same product.

Many of the cases referred to in Coe v. Duffield, supra, as an examination of them will disclose, involved differences in the method of conducting the business or enterprise. Attention may also be called to the case of Freeman v. City of Philadelphia, 178 Pa. Superior Ct. 290, in which a tax upon auctioneers enacted under the Sterling Act of August 5, 1932, P. L. 45, 53 PS §15971, from which the Tax Anything Act was modeled, was upheld. Thus an auctioneer was subject to a tax because his method of transacting busi-

ness varied from others engaged in the same general field.

In Philadelphia Association of Linen Suppliers v. Philadelphia, supra, a corporation involved in the business of supplying freshly laundered flat linen and garments at regular intervals to business establishments and professional offices was found to be justifiably taxed, although laundry businesses conducting their enterprises by the usual methods were not so taxed. Commonwealth v. Lukens, supra, cites with approval American Sugar Refining Company v. Louisiana, 179 U. S. 89, in which the United States Supreme Court held a State law imposing a tax upon persons carrying on the business of refining sugar and molasses, although the act exempted from such tax planters and farmers grinding and refining their own sugar and molasses. The court in the Louisiana case agrees that the act undoubtedly discriminated in favor of a certain class of refiners, but since this discrimination was founded upon a reasonable distinction in principle, it was nevertheless valid. In Knisely v. Cotterel, supra, at page 631, the court said, in a case involving classification of vendors into wholesale and retail, and the subclassification of dealers at an exchange or board of trade:

"It is equally clear that the subclassification of dealers at an exchange or board of trade is not based merely on location as complained, but on the *mode* of sale. Such dealers are not supposed in the ordinary course of their business to carry an actual stock of goods in a store or defined location, with its accompaniments of rent, clerk hire, expenses of delivery, etc., but to deal largely if not entirely on samples, orders, bills of lading, warehouse receipts, etc., by which title passes without actual handling of the goods. *If such differences in the manner of transacting the business exist, they are a legitimate basis for classification, and*

*whether they do in fact exist is a question for legislative determination.* We are unable to see that the classification in the act before us violates the constitutional requirement of uniformity." (Italics supplied.)

In several cases the Supreme Court of the United States has sustained a classification permitting chain stores to be taxed at rates higher than those applicable to single stores, graduating the tax upward on each store as the total number of units in one ownership is increased. Such a classification was found to be reasonable, because of the advantages incident to the conduct of multiple stores and obvious differences in chain methods of merchandising, as contrasted with those practiced in the operation of one store: State Board of Tax Commissioners of Indiana v. Jackson, 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A. L. R. 1464, 75 A. L. R. 1536; Louis K. Liggett Co. v. Lee, 288 U. S. 517, 77 L. Ed. 929, 53 S. Ct. 481, 85 A. L. R. 699; Fox v. Standard Oil Company of New Jersey, 294 U. S. 87, 79 L. Ed. 780, 55 S. Ct. 333.

We agree that our Store and Theatre Tax Act of June 5, 1937, P. L. 1656, which imposed a similar tax was found to be unconstitutional (American Stores Co. v. Boardman, supra), but this was because different rates were legislatively imposed on varying amounts or quantities of the same tax base, and the courts of Pennsylvania have consistently held that a graded tax lacks uniformity under our Constitution. We do not read the Boardman case to hold that the classification was improper, but rather that the graded tax was invalid. From the cases herebefore cited, we have come to the conclusion that there is no impropriety in a classification based on method of transaction of the enterprise.

Admittedly, there is some factual distinction between permitting classification by reason of the method of carrying on the business and where, as in the in-

stant case, the taxation of a particular kind of personal property is taxed which may involve a number of different kinds of enterprises, but this appears to be a distinction without a difference. Thus jukeboxes are taxed under the Act of 1947, although they are found in many kinds of establishments. It might be said that there was discrimination here because the proprietor in each instance would be discriminated against in favor of an operator who preferred to use a manually operated record player.

By the stipulation of facts filed it is agreed that two of plaintiffs, the Bucks County Credit Bureau and Ham-Shacks, Inc., are Pennsylvania corporations. The stipulation filed does not reveal whether these plaintiffs are the owners of vending machines or whether each has one in place in its establishment. The argument is advanced that being corporations, these plaintiffs are subject to a capital stock tax and that such a tax is levied upon all of their assets so that the present tax would be invalid under the prohibition contained in the Act of 1947 which forbids local authorities to "levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a state tax". In support of this proposition, plaintiffs refer us to that group of cases appearing in 362 Pa. and being Lawrence Township School District Tax Case, 362 Pa. 377; A. E. Dick Contracting Co. v. Hazle Township School District, 362 Pa. 387; Jamison Coal & Coke Company v. Unity Township School District, 362 Pa. 389; Hampton Township School District Tax Case, 362 Pa. 395; Centerville Borough School District Tax Case, 362 Pa. 400.

Although the rationale employed in arriving at the decisions in these cases may be said to be inconsistent, the Hampton Township School District Tax Case, supra, is declarative of the law as we now understand

it to be. It is there held that a school district resolution imposing a tax per ton upon the privilege of mining coal and also upon the privilege of bringing mined coal to the surface of the ground was as to plaintiff, a domestic corporation, invalid within the prohibition of the Act of 1947.

Whatever the impact of these cases may be on the situation now before us, we have concluded that it would not be proper to pass upon it now. As far as the present record discloses there is no coëxistence of ownership with use in plaintiff corporations. If they own, but do not use the machine, then they are not being made subject to the tax. On the contrary, if the machine is in use in their respective establishments, but not owned by them, no capital stock tax may have been paid thereon. In addition no tax has yet been imposed as to these specific plaintiffs and it may be that none will be, depending upon the facts in the individual case. It appears to us that the legislature intended to avoid duplication of the tax structure, recognizing that it would be unjust to impose a tax upon the tangible property of a corporation by means of the capital stock tax, and superimpose a tax by the municipality upon the owner for the use of the same property. On the present state of the record therefore, this issue cannot be decided.

As referred to in the findings of fact, testimony was produced to the effect that persons possessing the vending machines in certain instances would lose money by being required to pay the tax. The testimony was very limited, but we might conclude that certain persons have an income from the machines of an amount less than the tax itself. It is therefore argued that the tax, in certain instances, is excessive to the point of being confiscatory.

As was said in Philadelphia v. Samuels, 338 Pa. 321, 327: "If an occasional operator cannot afford to con-

tinue in business and pay the tax, it may be unfortunate but will not render the ordinance invalid." Or as it was otherwise stated in Commonwealth v. Girard Life Insurance Co., supra, at page 566: "We have nothing to do with the question of whether it was equitable and just, our only concern is with its constitutionality."

In Stewart Dry Goods Company v. Lewis, 294 U. S. 550, 79 L. Ed. 1054, 55 S. Ct. 213, Mr. Justice Roberts, speaking for the court says, page 562: "To condemn a levy on the sole ground that it is excessive would be to usurp a power vested not in the courts but in the legislature, and to exercise the usurped power arbitrarily by substituting our conceptions of public policy for those of the legislative body . . ."

*Opinion sur Exceptions*

BIESTER, P. J., September 25, 1959.—This matter is before the court on exceptions to the adjudication of the chancellor. Two bills of equity, one of which was a class action, challenged an ordinance of the Township of Bristol, this county, imposing a tax "upon the privilege of using for profit within the Township of Bristol, any vending machines or mechanical amusement devices" as defined in the ordinance. The tax is imposed upon the "person owning and/or operating the establishment in which such device is installed or located for use." Plaintiffs allege that the ordinance is violatory of article IX, sec. 1, of the Constitution of Pennsylvania, which provides: "All taxes shall be uniform, upon the same class and subjects, within the territorial limits of the authority levying the tax. . . ."

On February 20, 1959, a decree nisi was filed dismissing both complaints.

The chancellor's adjudication contained eight conclusions of law, to six of which plaintiffs filed excep-

tions. For the sake of clarity, we herewith repeat the conclusions of law of the chancellor.

1. The so-called Tax Anything Act of June 25, 1947, P. L. 1145, 53 PS §6851, authorized the Township of Bristol to impose a tax upon the privilege of employing tangible property.

2. A tax upon the privilege of using for profit within the Township of Bristol a vending machine is not such a tax as is proscribed by the Act of 1947 which forbids such a tax on the "privilege of employing such tangible property as is now or does hereafter become subject to a state tax."

3. The reasonableness of classification is for the legislature or the municipality.

4. An act of assembly, or an ordinance, should not be declared constitutionally deficient unless it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the minds of the court.

5. The fact that a tax ordinance is discriminatory does not render it invalid if the discrimination is founded upon a reasonable distinction.

6. Mere competition between taxpayers does not forbid a municipality from classifying and taxing differently.

7. It is not for the court to determine whether a particular tax is equitable and just, or whether a taxpayer potentially subject to the tax may be unable to operate at a profit if he pays such a tax.

8. The complaints must be dismissed at the cost of plaintiffs.

At argument the second, third, fifth, seventh and eighth conclusions were made the subject of attack.

The criticism of the second conclusion of law is directed, as it was in the first instance, to the effect of our holding on those plaintiffs who are corporations,

and therefore taxable by the Commonwealth through the Act of June 1, 1889, P. L. 420, last amended March 15, 1956, P. L. 1285, 72 PS §1871, and the Corporation Income Tax Law of August 24, 1951, P. L. 1417, last amended April 30, 1957, P. L. 66, 72 PS §3420n. It is contended that, since two of plaintiffs are corporations, and therefore subject to taxes peculiar to corporations in this Commonwealth, they fall within the exception contained in the Tax Anything Act of 1947, 53 PS §6851, which forbids local authorities to "levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a State tax."

The chancellor held in his adjudication that on the present status of the record this situation did not permit of an adjudication since: "No tax has yet been imposed as to the specific plaintiffs and it may be that none will be depending upon the facts of the individual case."

The phrases contained in the stipulations of counsel identified plaintiffs generally, in one case, as being the "owners and/or operators" of the establishments in which the vending machines are located and, in the other case, plaintiffs are generally identified as being the "owners, lessees or operators" of such establishments. The chancellor in discussing the effect of the impact of the capital stock tax said: "As far as the present record discloses there is no co-existence of ownership with use in the plaintiff corporations. If they own, but do not use the machines, then they are not being made subject to the tax. On the contrary, if the machine is in use in their respective establishments, but not owned by them, no capital stock tax may have been paid thereon." We are convinced that this reasoning is correct and see no occasion to alter the chancellor's adjudication in this respect.

In point of fact, plaintiffs in their briefs inferenti-

ally agree with this statement, but argue that this reference to the capital stock tax is not applicable to income taxes on corporations. It appears to us that, although there is a factual distinction, it is one without a substantial difference. In way of illustration, the corporations may be the owners of the establishments in which the machine is installed, but the tax may be imposed upon the tenants, that is to say the individuals who use the vending machine for profit. We repeat the words of the chancellor: "On the present state of the record, therefore, this issue cannot be decided."

In addition it is not for us, as we see it, to decide academically the constitutionality or invalidity of an ordinance, that is to say on the basis that a corporation may, sometime in the future, be required to pay a tax from which it should have been exempt: Knup v. Philadelphia, 386 Pa. 350, 353, and cases therein cited.

Then, too, we have found no cases which expressly hold that an ordinance or tax act should be struck down in its entirety because corporations are held to be exempt from the tax imposed. Plaintiffs again direct our attention to the group of cases appearing in 362 Pa. and being Lawrence Township School District Tax Case, 362 Pa. 377; A. E. Dick Contracting Company v. Hazle Township School District, 362 Pa. 387; Jamison Coal & Coke Company v. Unity Township School District, 362 Pa. 389; Hampton Township School District Tax Case, 362 Pa. 395; Centerville Borough School District Tax Case, 362 Pa. 400, which plaintiffs contend hold to this effect. We do not so regard them, although it is true that in the Jamison Coal & Coke Company case, supra, where the tax on "coal-mined" was held to be invalid as to the corporation involved, the court also held the tax to be invalid as to unincorporated producers. This, however, was solely on the ground that the whole ordinance would

not have been passed if the school district had realized that it was invalid as applied to corporations.

In Pittsburgh Coal Company v. Forward Township School District, 366 Pa. 489, Mr. Justice Jones in referring to the Lawrence Township School District tax case and the Jamison Coal & Coke Company case, stated that on those cases the tax resolutions were held invalid "as to corporations paying a state tax." We believe that this statement constitutes the real holding of those cases. Because the tax has been found to be unconstitutional, as applied to the given taxpayer, it does not follow that the act or ordinance is invalid in its entirety. Thus in Roy Stone Transfer Corporation v. Messner, 377 Pa. 234, the Corporation Income Tax Law was held to be unconstitutional as to the corporation involved because the State may not impose a tax on interstate commerce, the receipts therefrom or the privilege of carrying it on. In Cooper-Jarrett, Inc., v. Gleeson, 69 Dauph. 249, 252, the court says:

"The plaintiff contends that Roy Stone Transfer Corporation v. Messner, 377 Pa. 234 (1954) stands for the proposition that there is a want of power in the fiscal officers to impose a tax upon this plaintiff under the Corporation Income Tax Law of 1951 [August 24, 1951, P. L. 1417]. We do not understand that the Supreme Court invalidated this statute in its entirety. The Court did, however, invalidate the application of the Act to the plaintiff in that case—Roy Stone Transfer Corporation.

"In a later case in this Court, Commonwealth of Pennsylvania v. Eastman Kodak Company, 67 Dauphin 288 (1955) and 68 Dauphin 324 (1955), we held that the Act of 1951 was unconstitutional in its application to the taxpayer. We were careful to point out that we were not declaring the Act unconstitutional. The Supreme Court affirmed this decision, 385 Pa. 607 (1956), and again held that the Act of 1951

was unconstitutional in its application to Eastman Kodak Company. This statute has not been declared unconstitutional as a whole. Only its application has been declared unconstitutional in the Roy Stone and Eastman Kodak cases."

Any holding that would countenance the proposition that because a corporation should not be required to pay a given tax under the Tax Anything Act of 1947, it therefore follows that no similar tax could be imposed upon individuals and noncorporative bodies would, in our opinion, undermine the whole tax structure contemplated by the act. For these reasons we reject the arguments advanced in support of the exception to finding of fact no. 2.

As heretofore adverted to, the chancellor found as a conclusion of law no. 3 that: "The reasonableness of classification is for the legislature or the municipality." The adjudication clearly recognized that such classification is subject to judicial review. It was certainly not the intent of the chancellor to negate the right of the courts to pass upon the reasonableness of the classification and therefore, to avoid any possible misunderstanding, we sustain the exception to this conclusion of law, so that it shall now read: "The reasonableness of classification is for the legislature or the municipality in the first instance."

The fifth conclusion of law is criticized only as to the application of the facts to the conclusion itself. Whatever the merit of that contention may be, no argument is advanced against, nor fault found, with the rule of law itself.

The exceptions to the chancellor's conclusions of law nos. 7 and 8 are merely repetitious of the arguments advanced prior to the adjudication. The adjudication adequately disposes of these contentions and we see no occasion to here reiterate what the chancellor said in respect thereto.

*Final Decree*

And now, to wit, September 25, 1959, plaintiffs' exceptions, other than the exception to conclusion of law no. 3, which is modified as set forth in this opinion, are hereby dismissed and refused and it is ordered, adjudged and decreed that both complaints be dismissed at the cost of the respective plaintiffs.