[No. 5810.]

## LEONARD v. REED, COUNTY CLERK.

1.   **Constitutional Law—Itinerant Vendors' Act**—A statute which imposes a license fee upon one who engages temporarily in selling merchandise from a store-room, while no such imposition is made upon one permanently engaged in the same business, is unconstitutional.—(311)

2.   **Classification**—Classification, to be valid, must be natural and reasonable. A statute imposing a license fee upon one temporarily engaged in the sale of goods to the consumer, while exempting those who sell like goods· to merchants, is void.—(311)

3.   **Citizens of Other States**—A statute which imposes a license fee upon a citizen of another state who, in this state, temporarily engages in the sale of merchandise, making no like exaction from residents permanently engaged in the same traffic, is opposed to sec. 2, art. IV, of the federal constitution, and void.—(311, 312)

4.   **License Fees**—The state may require a license to engage in business; but the legislation to this 'end must be uniform, and not discriminate in favor of one class against another.—(312)

5.   **Double Taxation**—The act of April 11, A. D. 1903 (Laws 1903, 408) has the effect to impose a double tax upon the same goods, and is void.—(313)

6.   **Taxation—Uniformity**—A statute which imposes a tax upon goods offered for sale, and makes no like imposition upon like goods which are not placed on the market, violates the requirements of sec. 3, art. X, of the state constitution.—(316)

So of a statute which imposes a tax in regard to merchandise that is sold from a store-room, exempting chattels which are customarily sold in another manner.—(316)

7.   **Payment Under Protest**—A tax or license fees exacted without authority of law, and paid under protest, may be recovered.—(308-316)

*Error to El Paso District Court*—Hon. ROBERT E. LEWIS, Judge.

Mr. R. L. CHAMBERS, for plaintiff in error.

Mr. R. L. HOLLAND, for defendant in error.

Mr. Justice Gabbert delivered the opinion of the court:

The sole question presented for our determination is the constitutionality of the Itinerant Vendors' Act, Session Laws 1905, p. 274, and an act entitled "Revenue," chapter 157, Acts 1903, 408.

Leonard paid the license fee exacted by the Itinerant Vendors' Act, and also the tax levied upon his property under the provisions of chapter 157 of the Acts of 1903. Thereafter an agreed case was submitted to the district court, the purpose of which was to determine whether he was entitled to recover the fee and tax so paid. From the facts agreed upon in the trial court, so far as necessary to consider in determining the constitutionality of the acts in question, it appears that, in the summer of 1905, Leonard was a citizen of the United States, a non-resident of the state of Colorado, and that his place of residence was Pasadena, California; that he was then engaged in selling manufactured goods, wares and merchandise in a store-room rented by him for that purpose in the city of Colorado Springs; that the occupation of such room was temporary and without intention to engage in permanent trade therein; that his stock of merchandise consisted of articles brought into this state; and that Reed, county clerk and recorder of El Paso county, demanded of him as a license for the privilege of conducting his business, the sum of $250.00, which was paid to Reed under protest. It further appears that Leonard brought his stock of merchandise into El Paso county and state of Colorado subsequent to May 1, 1905; that, pursuant to the revenue act involved, a tax in the sum of $41.09 was assessed against this stock, which sum he paid to the county treasurer of El Paso county under protest. September 30, 1905, judgment was rendered in

favor of the defendants, Reed et al., from which the plaintiff appealed.

We have no jurisdiction to entertain the appeal (§ 388, Civil Code), but, by virtue of the provisions of § 388a, *id.,* we have directed the clerk to enter the action as pending on writ of error. Were it not for the fact that appellees have entered an appearance, we would be compelled, on the authority of *Brady v. People,* 45 Colo. 364, 101 Pac. 340, to dismiss the appeal, and refuse to consider it on error.

The term, "itinerant vendor," as defined by the Itinerant Vendors' Act, includes any person who engages in either a temporary or transient business in this state, in one locality or by traveling from place to place selling merchandise, and also "those who, for the purpose of carrying on their temporary or transient business, hire, lease, or occupy a building, structure, tent, car, boat, vehicle, store-room, or place of any kind for the exhibition and sale of any manufactured goods, wares or merchandise." The succeeding section declares that the act shall not apply to commercial travelers or agents selling to merchants in the usual course of business. This act was under consideration in *Smith v. Farr, post,* 364, wherein we held that the constitution of the United States confers upon congress the sole power to regulate commerce among the several states, and, therefore, interstate commerce cannot be taxed by a state. We also held that, as applied to the facts of that case, the law was invalid for the reason that it was nothing more or less than the imposition of a tax upon nonresidents bringing merchandise into the state for the privilege of selling to the consumer. Such is the effect of the law in the case at bar. Plaintiff in error is required to pay the license fee exacted for the privilege of disposing of his mer-

chandise at a store-room because he temporarily occupies it without the intention of engaging in permanent trade at that place. His temporary occupation results from the fact that he is a non-resident, bringing with him from a sister state articles of merchandise which he seeks to dispose of to those purchasing for their own use. A resident merchant, permanently engaged in selling the same class of merchandise at a store-room in Colorado Springs, is exempted from the payment of such license. This imposes a burden upon the nonresident coming to the state for the purpose of engaging in commerce by requiring him to pay for the privilege of selling articles of merchandise brought with or sent to him from the outside, from which the resident, permanently engaged in business, is exempted. That it is not a tax imposed upon the merchandise of plaintiff because it had become a part of the general mass of the property of the state is manifest from the fact that, in addition to the license fee exacted, the Act of 1903, *supra,* provides for the levy of a tax, and under which a tax was, in fact, levied in addition to the license fee exacted, the validity of which we shall consider later. The existence of this provision serves to strengthen our conclusion in *Smith v. Farr,* wherein it was stated, as applied to the facts of that case, ''The license exacted is nothing more or less than a tax imposed upon outside manufacturers for the privilege of selling their products in this state direct to the consumer, for the reason that manufacturers within the state are relieved from that burden.''

The fourteenth amendment to the federal constitution provides: ''No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * *

nor deny to any person within its jurisdiction the equal protection of the laws.'' The act exempts from its operation commercial travelers or agents selling to merchants in the usual course of business. This is a discrimination without any reason. An itinerant vendor, as defined by the act, could maintain a temporary place of business next door to plaintiff, and engage in selling the same character of merchandise to merchants, without paying a license fee. A burden is thus imposed upon one itinerant vendor from which another is exempt. We can see no reason why one, temporarily occupying a store-room and selling to merchants, may do so without paying a license fee, while another, who sells the same article, from his temporary place of business, to the consumer, must pay that fee. Classification which is natural and reasonable is valid; that which is arbitrary and capricious is not. In short, as we held in *Smith v. Farr, supra,* under the statute one may enjoy a right which is denied another, within the same jurisdiction in like circumstances, and for that reason the statute is obnoxious to the fourteenth amendment to the federal constitution.

The federal constitution further provides: ''The citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states.''—Sec. 2, art. 4. The statute under consideration clearly violates this provision. When analyzed for results, we find that the citizen of another state who comes to Colorado to temporarily engage in the sale of merchandise in a store-room temporarily occupied, without the intention of engaging in permanent trade in such place, is required to pay a license fee, while a resident merchant next door, occupying his place of business permanently

and engaged in selling the same character of merchandise, is not required to pay that fee. So that it is manifest the statute attempts to confer privileges and immunities upon its own residents which it denies to those of other states.

A state may require a license to engage in business, but such license must be uniform and not discriminate in favor of one class and against another, nor in favor of its own citizens as against those of other states, or require a license which will constitute a regulation of interstate commerce, and a statute not uniform in its operation, but in favor of one and against another, although each is engaged in the same business and vending the same character of articles in a similar way, is unconstitutional.—*Ames v. The People,* 25 Colo. 508. On the authority of that case, and *Smith v. Farr, supra,* plaintiff was entitled to judgment for the license fee paid.

The revenue act of 1903 is entitled: "An act to subject stocks of goods, wares or merchandise entering any county subsequent to the first day of May, in any year, for temporary lodgment and sale to the taxes imposed upon permanent stocks of the same character and providing methods of collecting the same." Sec. 1 is as follows: "Whenever any person, firm or corporation shall, subsequent to the first day of May of any year, bring or send into any county any stock of goods or merchandise to be sold or disposed of in a place of business temporarily occupied for their sale without the intention of engaging in permanent trade in such place, the owner, consignee or person in charge of said goods or merchandise, shall immediately notify the county assessor, and thereupon the assessor shall at once proceed to value the said stock of goods and merchandise at its true value, and upon such valuation the said

owner, consignee or person in charge shall pay to the collector of taxes a tax at the rate assessed for state, county and local purposes in the district in the year then current.    *    *    *,,

From a literal reading of the statute it imposes double taxation. This the law does not authorize nor permit.—*People ex rel. v. Ohio & M. R. Ry. Co.,* 96 Ill. 411; *County Commrs. v. Wilson,* 15 Colo. 90. The act, however, if enforced, would result in double taxation. Its purpose, as deduced by its title, is to subject a stock of merchandise brought into any county subsequent to the first day of May in any year, for temporary lodgment and sale, to the tax imposed upon permanent stocks of the same character. The statute provides for carrying out this purpose. Let us consider the results which would follow the enforcement of the statute. A merchant doing business in the city of Denver has returned, for the purpose of assessment, the average value of his stock of merchandise, for the year preceding April 1st, as required by our general revenue act. Upon such valuation the taxing authorities of the city and county of Denver will levy a tax which the owner will be required to pay. If, subsequent to the date of making his return, and after the first day of May, of the year such return was made, he removes the stock he had on hand April 1st, or a part thereof, to the city of Colorado Springs, he would be required to pay another tax for state, county and local purposes equal to that assessed upon similar stocks of like value in that city. Or, take the case of a merchant engaged in business in the city of Denver, who concludes to temporarily enlarge his business by renting a store next door, without any intention of engaging in permanent trade at that place, and for the purpose of furnishing a stock for

such store brings in from outside the state, subsequent to May 1st, a new stock of goods, and places them in the temporary store for sale. Under our general revenue act he would be required to include this new stock in determining the average value of his merchandise for the year, would be assessed thereon, and required to pay taxes accordingly; and yet, in addition to this taxation, according to the statute, he would be compelled, as a condition precedent to offering his stock for sale in his temporary store, to pay a tax on its full cash value, equal to that assessed for state, county and local purposes upon similar merchandise of like value. In each instance, the enforcement of the statute would result in double taxation.

If the legislature has the power to impose any such tax, in the circumstances considered, then it might require the resident of San Miguel county, who should go to the county of Montrose and purchase a horse after the first day of May from the owner who had returned it in his tax schedule, and who would be required to pay a tax thereon, and brought it into the county of San Miguel for his own use, to pay a tax as a condition precedent to enjoying that privilege; or, a teamster engaged in the business of teaming in the city of Denver, if he should temporarily engage in teaming in the county of Jefferson, could be required to pay a tax upon his outfit because taken into the latter county after a certain date, although he was regularly assessed for such property in the county of his residence. True, these are extreme cases, and it is not likely that we will ever be called upon to consider the validity of an act imposing taxes in such circumstances, but they serve to illustrate the extent to which the legislature might go if the act under consideration could be enforced as it reads literally.

Counsel for the defendants say that no question of double taxation is presented, in view of the fact that the property was brought into the state subsequent to the first day of May, 1905, and hence, that the tax levied is not upon goods taxed in some other county. He contends that the object of this act is to secure equality in the tax laws by providing that stocks of goods brought into the state after the first day of May in any year and temporarily placed on the market in competition with goods bearing the burden of taxation, shall also bear their proportionate share thereof. Conceding, for the sake of the argument, that the law is susceptible of this construction, and that the general assembly has the power to provide by law for the levy and collection of a tax on merchandise brought into the state and temporarily placed on sale, let us see if the law under consideraion is valid. Sec. 3, art. X of our constitution provides that "All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under the general laws, which shall prescribe such regulations as will secure a just valuation for taxation of all property, real and personal." Uniformity in taxing implies equality in the burden of taxation, and all taxes must be uniform on the same class of property within the jurisdiction of the authority levying them.—*Catron v. County Commrs.*, 18 Colo. 553; *People ex rel. Crawford v. Lathrop*, 3 Colo. 423; *Sleight v. The People*, 74 Ill. 47.

Tested by our constitution and the principles deducible therefrom, we find the law wanting in validity. It imposes a tax upon goods and merchandise brought into any county subsequent to the first day of May in any year for temporary lodgment and

sale, and by necessary implication, relieves goods of a similar character brought into the same county at the same time from the burden of such tax if they be not placed upon the market. This discrimination robs the law of the indispensable requisite that taxes shall be uniform upon property within the jurisdiction of the body imposing them. If a certain character of property brought into a county for a particular purpose after the first day of May in any one year may be subjected to a tax, then all other property within the same jurisdiction of a similar character must be subjected to the same tax in order to satisfy the provision of our constitution on the subject of uniformity of taxation.—*Graham v. Commrs. of Chautauqua Co.*, 31 Kan. 473; *County Commrs. v. Wilson, supra.*

It may be that the act only covers that class of goods or merchandise usually sold from a store-room. We do not deem it necessary to pass upon this question, but call attention to the fact that if it was so construed, then it would be obnoxious to the provision of our constitution relating to uniformity of taxation, for the reason that all chattels not usually sold from a store-room, like horses or cattle, although brought into the county after the first day of May in any year and placed upon the market, would not be subject to the tax provided by the statute.

The judgment of the district court is reversed and the cause remanded with directions to enter judgment in favor of plaintiff in accordance with the views expressed in this opinion.

*Reversed and remanded.*