## No. 14,180.

### City and County of Denver et al. *v.* Tax Research Bureau.
(71 P. [2d] 809)

Decided August 28, 1937.

Mr. Malcolm Lindsey, Mr. Frank L. Hays, for plaintiffs in error.

Messrs. Van Cise, Robinson & Charlton, for defendant in error.

Mr. Rudolph Johnson, Mr. S. Arthur Henry, amici curiae.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

This proceeding involves the ad valorem tax status of intangible personal property as defined by House Bill No. 148, Laws of 1937, for the year 1937.

At the 1936 general election the people added to article X of the Constitution, section 17 which reads as follows: "The General Assembly may levy income taxes, either graduated or proportional, or both graduated and proportional, for the support of the state, or any political subdivision thereof, or for public schools, *and may, in the administration of an income tax law, provide for* special classified or limited taxation or *the exemption of tangible and intangible personal property.*"

142

By virtue of the authority conferred by this constitutional amendment the Thirty-first General Assembly passed an income tax law designated as House Bill No. 148 which was signed by the Governor June 2, 1937. This act imposed a tax upon net incomes and an additional surtax upon gross income derived from certain specified intangible personal property. Section 39 of the act provides: "From and after the effective date of this Act, and notwithstanding any other provision of law, all intangible personal property * * * shall be exempt from ad valorem tax imposed by the state of Colorado, or by any political subdivision thereof; * * *"

Section 38 of the act provides: "The first taxable year under this act shall be for the period beginning on the basic date and (1) as to taxpayers on a calendar year basis shall end on December 31, 1937; (2) as to taxpayers on a fiscal year basis, shall end on the last day of such calendar month as may constitute such taxpayers' first fiscal year ending after the basic date. * * *"

By section 1, paragraph 12, it is provided: "The term 'basic date' means the first day of the first calendar month following the month within which this act becomes law."

Since the act was approved by the Governor on June 2, 1937, the basic date which marks the beginning of the first taxable year under the act was July 1, 1937. The act contained the safety and emergency clauses and repealed all laws in conflict therewith.

The defendant in error in its tax schedule for the year 1937 listed certain personal property asserting that monies, notes and credits were reported on the schedule without prejudice to the taxpayer contending that by virtue of House Bill No. 148, supra, the same were wholly exempt from ad valorem tax for the year 1937. The plaintiffs in error, to whom we shall hereafter refer as the city, thereupon instituted this proceeding to obtain a declaratory judgment as to whether or not the in-

tangible personal property of the defendant in error was subject to the ad valorem tax for the year 1937. The district court decreed that under the new income tax law intangible personal property could not be assessed for ad valorem tax after July 1, 1937, but could be assessed for ad valorem taxes for the first six months of 1937 and directed the assessment of the intangible personal property of the defendant in error for 1937 for ad valorem taxation on the basis of one-half of the total valuation thereof.

From so much of the district court's decision holding that the intangible personal property involved is not subject to an ad valorem tax for the second half of 1937, the city sued out the writ of error herein. The defendant in error has assigned cross-errors to the portion of the decree which permits the city to impose an ad valorem tax on such property for the first half of 1937.

There is no question that the first taxable year under the new income tax law began on July 1, 1937, and that its provisions imposing taxes on gross and net incomes are effective from and after that date. Notwithstanding this, the city contends that intangible personal property is subject to ad valorem taxation for the entire year 1937, upon two grounds: (1) That on April 1, 1937, prior to the effective date of the income tax law, the ad valorem tax for the year 1937 had already become a lien upon intangible personal property and that by section 38, article V, of the Constitution prohibiting the release of liabilities held by the state or any municipal corporation, the General Assembly is precluded from releasing any part of the ad valorem tax thereon for the year 1937; (2) that section 6 of article X of the Constitution prohibiting the General Assembly from exempting from taxation property other than that mentioned, taking into consideration the language of section 17, of article X of the Constitution hereinabove quoted, prohibited the legislature from exempting intangible personal property from ad valorem taxes for any part of the year 1937, be-

cause the income tax law will not make available any replacement revenue during the year 1937.

In connection with the first contention the city relies upon S. L. 1921, page 689, section 1, C. L. section 7180, 1935 C. S. A. chapter 142, section 4, providing that: "The lien of general taxes for the current tax year shall attach to all property real and personal, not exempt by law, on the first day of April in each year."

█ It is conceded by the stipulation of facts in the case at bar that the assessor had not at the effective date of the act completed his assessment for the year 1937 and, of course, no levies have been made for the 1937 ad valorem tax. Under our revenue laws relating to the imposition of the general ad valorem property tax and the decisions of this court in *People ex rel. Colorado Tax Commission v. Pitcher,* 56 Colo. 343, 383, 138 Pac. 509 and *People ex rel. v. Pitcher,* 61 Colo. 149, 156 Pac. 812, the assessment for ad valorem taxes is not fully completed until the termination of the annual meeting of the State Board of Equalization on the third Monday in October in each year. This court has not heretofore had occasion to determine when the lien contemplated by chapter 142, section 4, C. S. A. 1935, supra, becomes operative, but the general rule seems to be that taxes not assessed are not liens. *Heine v. Levee Commissioners,* 19 Wall. (U. S.) 655, 659, 22 L. Ed. 223. The case last mentioned was cited with approval by our Court of Appeals in the case of *Wason v. Major,* 10 Colo. App. 181, 50 Pac. 741, where it was held that under the 1891 statute the simple listing of real estate for taxation did not give a county a lien for taxes to be subsequently levied thereon.

In the case of *City of Portland v. Multnomah County,* 135 Ore. 469, 296 Pac. 48, under a provision of the Oregon code reading: "The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, * * *," where subsequent to March 1st and

before any assessment had been made, the property involved had been conveyed to the City of Portland and thereby had become exempt from taxation, the Supreme Court of Oregon held that a tax subsequently assessed for the current year would not relate back to March 1st and thereby make the property liable. In this connection the court, at page 473, said: "If, after the assessor had made a valuation of the property as of March first, no other steps had been taken in the tax proceedings provided by statute, no lien would have attached—assuming that the property was taxable. It is only when the amount of the tax has been determined and levied that the lien relates and attaches as of the date specified by the statute. Of course, the doctrine of relation presupposes the creation of a valid tax. If the property is nontaxable, the doctrine has no application. Viewing the case from any angle, we are convinced that no valid and enforceable lien is upon the land which passed to the city prior to the levy of the tax." (Citing many authorities.)

The Supreme Court of Arizona, in the case of *Territory ex rel. v. Perrin,* 9 Ariz. 316, 83 Pac. 361, where property belonging to an individual had been surrendered to the United States in lieu of other property selected by him under a federal statute authorizing the same, the transfer having been made between the first and final steps of taxation, decided that the lands were exempt from taxes levied during the year they were surrendered to the government, saying at page 320: "And this is true even where, as in this territory, the legislature has declared that a lien for taxes shall attach at a date prior to the time when the first steps are taken to subject the real estate to taxation. There can be no real or effective lien until the amount of the taxes is ascertained and assessed. 'In the nature of things, no tax or assessment can exist, so as to become an encumbrance on real estate, until the amount thereof is ascertained and determined.' Black on Tax Titles, §189; *Dowdney, et al. v. Mayor etc.,*

146

54 N. Y. 186. And see *Gillmor v. Dale*, 27 Utah 372, 75 Pac. 932. Under such provisions of law, when the rate of taxes is fixed and the amount determined and levied, the lien for such amount relates back and attaches as of the date specified in the statute. *McLaren v. Sheble*, 45 Mo. 130; *Reeve v. Kennedy*, 43 Cal. 643; *Cochran v. Guild*, 106 Mass. 29, 8 Am. Rep. 296; *Gillmore v. Dale*, 27 Utah 372, 75 Pac. 932. In the case at bar, the lands having become the property of the United States at the time the taxes were levied and assessed, and no longer subject to taxation, the acts of the taxing officers were void and of no effect.''

To the same effect is the case of *Bannon v. Burnes*, 39 Fed. 892, where a controversy arose over the tax liability of certain property in Kansas City purchased by the United States for the erection of a post office. The charter of Kansas City provided that the lien for city taxes attached on January 1st, but in the year in question the levy was not made until the 3rd of April and after the Government had acquired title to the property. It was held that the property was not liable for taxes for that year. In this connection the court, at page 898, said: ''The mere fact that the property owned on the 1st day of January became liable to taxes for that fiscal year would not avail for the purpose of taxation, without an assessment and levy. Taxes not assessed or levied can never become an effectual lien.''

In *Milliken v. O'Meara*, 74 Colo. 475, 222 Pac. 1116, the only Colorado case cited by the city in support of its first contention, it appears that the taxes for which a lien was upheld had been assessed *before* the controversy arose and does not determine that any lien existed prior to the assessment. The city, in support of its theory on this point, cites sections 6 and 295, chapter 142, C. S. A. 1935, providing for the immediate issuance of distraint warrants by a county treasurer in case live stock or other personal property is about to be removed from the jurisdiction, as being a legislative recognition of the

principle that the lien for taxes on personal property becomes fixed at the statutory date, even though the assessment and levies have not been made at that time.

We do not believe that these statutes have the effect which the city attributes to them and more logically may be said to be authority for the proposition that no lien attaches until assessment and levy are made since by their express provisions *before* issuing distraint warrants the treasurer must secure a special assessment from the assessor, and if the levies have not been made for the year, is authorized, in computing a tax, to use the levies made from the *previous tax year.* These statutes were obviously designed to effectuate the collection of current taxes on personal property about to be removed from the jurisdiction and certainly cannot be said to have a direct bearing upon the issues in the case at bar.

It is our conclusion that the lien provided for by chapter 142, section 4, C. S. A. 1935, supra, does not become effective until the property is assessed and the taxes levied, at which time the theretofore inchoate lien relates back and attaches as of April first of that year. If, before the lien so attaches, the specific property legally assumes a tax exempt status, the doctrine of relation does not function. It follows, therefore, that on the date the income tax law became operative, there was no effective lien for the 1937 ad valorem tax on the intangible personal property of the defendant in error and the action of the General Assembly in exempting such property from ad valorem taxation, if it otherwise had the power, is not in derogation of section 38, article V of the Constitution.

Passing now to the second contention of the city.

■ ■ Article X of the Constitution deals with tax matters. Certain exemptions (heads of families, property used for religious worship, etc.), are provided. Section 6 expressly states: "All laws exempting from taxation, property other than that hereinbefore mentioned, shall be void." When article X was amended

by vote of the people in 1936, by the inclusion of the new section 17 relating to income tax which is hereinabove quoted, section 6, supra, was re-enacted and still remains a part of the Constitution. In the cases of *Board of Commissioners v. Owen,* 7 Colo. 467, 4 Pac. 795, and *Imperial Fire Ins. Co. v. Denver,* 51 Colo. 456, 118 Pac. 970 this court held that acts of the legislature attempting to exempt, respectively, properties included within incorporated towns and cities from a levy of a property tax for road purposes, and personal property of insurance companies from ad valorem taxation, were forbidden by sections 3 and 6, article X, as not being within the constitutionally exempted class of property. Article X of the Constitution as amended by section 17, extended to the legislature the additional power to provide for specially classified or limited taxation or the exemption of tangible or intangible personal property in the administration of an income tax law.

Under the decisions last mentioned and the express terms of section 6 in the original and amended article X, the legislature was without constitutional authority to exempt intangible personal property of the defendant in error from ad valorem taxation until this was done under the provisions of section 17. As has been pointed out, by its terms, the new income tax law, House Bill No. 148, supra, become operative on July 1, 1937, before which time no statute had been enacted making the exemption under discussion operative and the trial court was correct in determining that the intangible personal property of the defendant in error is subject to ad valorem taxation for the first six months of the year 1937.

We further believe that the trial court was right in holding that the intangible personal property of the defendant in error was exempt from ad valorem taxation for the second half of 1937.

An examination of the new income tax law clearly discloses that the purpose of the legislature in its adoption was to substitute the income tax on incomes, net

and gross, imposed by section 2 for all ad valorem taxation on intangible personal property. It is certain, as we have stated, that from and after July 1, 1937, the owners of the intangible property specified in the new act are subject to the income and surtax provided therein. It is also conceded that in the years succeeding 1937, and so long thereafter as the present act is in force, intangible personal property will be exempt from ad valorem taxation. The city argues, however, that by the provisions of House Bill No. 148, supra, except in the cases of taxpayers operating on a fiscal year basis and whose fiscal year expires before July 31, 1937, no actual revenue for the replacement of ad valorem taxes will be available until late in the fall of 1938. The city points out that under section 17, supra, the exemptions of intangible personal property can only be made ''in the administration of an income tax law,'' and import to the words ''the administration of'' the meaning that it is only when an income tax law has begun to produce revenue to be used as a substitute for the amount to be raised by the ad valorem tax on intangibles that the legislature under the inhibition of section 6 can constitutionally exempt intangibles.

We do not believe this strained construction is justified. It seems to us that the obvious and declared purpose of the legislature was to make effective the income tax on intangibles as of July 1, 1937, and having so imposed this new tax on this type of personal property, to immediately and on the same date exempt such property from the old ad valorem tax. Section 39 of the act prohibits the imposition of the ad valorem tax on intangible personal property ''from and after the effective date of this act and notwithstanding any other provision of law.'' It is difficult to conceive of words which could more definitely and conclusively proclaim the intention of the legislature in this connection. The express repeal of all laws in conflict with House Bill No. 148, supra, is also inconsistent with any other design.

If the position of the city was upheld, the owners of specified intangible property for the last half of the year 1937 would be subject not only to the income tax on the income, net and gross, realized from intangible personal property, but also the ad valorem tax upon the property itself. It cannot be presumed that the legislature intended to impose double taxation, or what, in effect, would amount to the same thing, on the owners of such intangible personal property, thereby creating a situation which was condemned by this court in the cases of *Leonard v. Reed*, 46 Colo. 307, 104 Pac. 410, *Murray v. County Commissioners*, 67 Colo. 14, 185 Pac. 262, and *Hutchinson v. Herrick*, 70 Colo. 534, 203 Pac. 275.

The city also asserts that the exemption provisions of House Bill No. 148, supra, must be strictly construed as against the defendant in error and cites a number of authorities to the effect that claims for exemption from taxation should not be favored because of the added burden necessarily thrown upon other taxpayers through increased levies or tax impositions. It would seem that this argument has no place in the case at bar. As we have said, the purpose and effect of the act is to substitute one form of taxation for another in which case the rule to be applied is the one which requires a liberal construction in favor of the taxpayer and against the taxing power. *Binghamton Trust Co. v. City of Binghamton*, 76 N. Y. S. 517, 519; 61 C. J., p. 396, note 89.

This rule is well stated by the Supreme Court of California in *City and County of San Francisco v. Pacific Telephone and Telegraph Co.*, 166 Cal. 244, 135 Pac. 971, where it is said: "The appellant, relying upon the well-settled rule that exemptions from taxation are to be strictly construed (2 Lewis's Sutherland Statutory Construction, section 539), argues that every doubt concerning the meaning of the provision in question must be resolved against the defendant. But we think the amendment does not grant any exemption within the meaning of this rule. As we have pointed out, it provides a

specific mode of taxation, in substitution of certain other modes. In *Merrill Ry. & Lighting Co. v. City of Merrill,* 119 Wis. 249 [96 N. W. 686], the court, after recognizing the doctrine of strict construction of exemptions, goes on to say: 'On the other hand, it is equally well settled that, where the statute in terms exempting property from general taxation is only a part of a general statutory scheme imposing a license or other impost in lieu of general taxation, the rule of strict construction has no application, but on the contrary, such a statute is to be construed liberally in favor of the person required to pay taxes in the substituted license form.' " Further, it has been uniformly held in this state that taxing acts must be construed strictly and most strongly against the taxing power and in favor of the taxpayer. *People ex rel. v. Lothrop,* 3 Colo. 428; *Gomer v. Chaffee,* 6 Colo. 314; *Belier v. Wilson,* 59 Colo. 96, 147 Pac. 355.

It was within the power of the trial court to make the apportionment it did, in subjecting the property in question to ad valorem taxation for the first half of 1937 and exempting it (subject to the tax imposed by House Bill No. 148, supra), for the last half of this year. *Graham Paper Co. v. Gehner,* 332 Mo. 155, 59 S. W. (2d) 49; *State ex rel. v. Koeln,* 332 Mo. 1229, 61 S. W. (2d) 750; *Smith v. Dirckx,* 283 Mo. 188, 223 S. W. 104, 11 A. L. R. 510; *Commonwealth v. Mortgage Trust Co.,* 227 Pa. 163, 76 Atl. 5.

It is undoubtedly true, as the city contends, that for the year 1937 the ad valorem tax levies will have to be increased to make up for the deficiency in valuation caused by the exemption on intangible personal property for the last half of the year. It may be said in this connection, however, that the burden of the property taxpayers will be reduced in 1938 to the extent of the income tax collected from owners of intangibles during the last half of 1937. Courts do not possess legislative power and have no control over the policies of the legislature so long as they remain within the bounds of the Consti-

tution. Had the General Assembly desired to bring about the situation contended for by the city, it could have done so by appropriate provisions in the act. As the matter stands the new statute must be given the effect its terms clearly state and the political subdivisions affected must proceed to assess and levy taxes in conformity with its provisions.

The judgment of the district court is, therefore, affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE HILLIARD dissenting.

I am not in accord with the opinion of the court. I think the General Assembly did not intend to exempt "monies, notes and credits" from ad valorem tax for all or any part of the taxing year 1937, nor could it have done so. It is inconceivable that the representatives of the people should deliberately relieve the owners of intangible property in the City and County of Denver (in excess of twenty million dollars, and an unknown sum in other counties) from usual tax visitations, knowing that the loss of revenue thus would have to be made up by increased levies on real estate and tangible personal property, already bearing a discouraging tax burden. At least, I prefer to absolve the legislative branch of the government from any purpose so unfair to owners of tangible property. Furthermore, I am unable to deduce that result from the language of the income tax act, and regard the court's view otherwise as strained—doing violence to legislative good faith.

To the property involved in this proceeding, tax lien attached April 1, 1937. '35 C. S. A., c. 142, §4. See *People v. Denver,* 85 Colo. 61, 273 Pac. 883; *Milliken v. O'Meara,* 74 Colo. 475, 222 Pac. 1116. It was not competent for the General Assembly to release such lien. Colorado Constitution, article V, §38. By article X

(sections 3 and 5), of the Constitution, provision is made for exempting from taxation certain property of heads of families, and property used for religious, educational and charitable purposes; but by section 6 it is specifically provided that, "All laws exempting from taxation, property other than that hereinbefore mentioned, shall be void." An act authorizing a property tax for road purposes, exempted "property included within the limits of incorporated towns or cities" from the levy. We held that the exemption was within the inhibition of section 6, article X, of the Constitution, hence void. *Board of Commissioners v. Owen,* 7 Colo. 467, 4 Pac. 795. An act requiring insurance companies to pay two per cent of the gross of their premiums and relieving them of all other taxation on personal property, we said was void because it exempted such corporations from paying taxes in the interest of taxing units, all in contravention of section 10, article X, of the Constitution. *Imperial Fire Ins. Co. v. Denver,* 51 Colo. 456, 118 Pac. 970. But, it is said, section 17 (the income tax constitutional provision), article X of the Constitution, which is the authority for imposition of an income tax, permits "exemption of tangible and intangible personal property." Hence, as said, the exemption claimed by the taxpayer here is constitutional. The difficulty with that contention is that the General Assembly may exercise the power to exempt from taxation only "in the administration of an income tax law." Considering the administration feature of the income tax act of 1937 (the act sufficiently appears in the court opinion), no money will be available therefrom until not earlier than mid-October, 1938. To the extent, therefore, that property is exempted from ad valorem taxation for 1937, other property must bear an added impost. It is to be noted that section 17 does not in itself exempt intangibles, as does the act, nor give the General Assembly simple power to that end, but does authorize the enactment of an income tax "for the support of the state, or any political subdivision thereof, or

for public schools," and "in the administration of an income tax law," to exempt tangible and intangible personal property from ad valorem taxation.

The income tax, as the least advised knows, and which the court must notice, was intended to operate as a replacement—not to add property tax burdens presently or ever. In its administration the purpose can be effectuated; but if the owners of intangibles are to move at once into favorable position to shirk ad valorem taxes —already a lien and not releasable and which others may not avoid—then the owners of real estate, never to be exempted from income tax exactions on income from such property, and income from tangible personal property, not exempted by the law, must remain in the front trench and pay—not as they have always paid, but more ad valorem tax—in order that the deficiency resulting from the exemptions enjoyed by the owners of "monies, notes and credits," may be discharged. I submit that the General Assembly had no such injustice in mind.

Mr. Chief Justice Burke concurs in this opinion.