DE LANEY et al. v. CITY AND COUNTY
OF DENVER et al.

In re WHITE et al.

No. 4103.

United States Court of Appeals
Tenth Circuit.

Nov. 1, 1950.

Rehearing Denied Dec. 7, 1950.

248

Samuel S. Ginsberg and Julius F. Seeman, Denver, Colo., for appellant.

Charles H. Haines, Denver, Colo., (J. Glenn Donaldson, Denver, Colo., on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

This appeal involves the enforceability of two tax liens asserted by the City and County of Denver, Colorado,[1] on certain personal property which passed into the hands of the trustee in bankruptcy and was sold by him free of liens.

The facts are stipulated. The Whites owned store fixtures and a stock of merchandise and operated a retail furniture business in Denver, Colorado, from prior to March 1, 1946, until August 25, 1948. On the latter date, on an involuntary petition filed April 30, 1948, they were adjudged bankrupts and the matter was referred to Honorable Frank McLaughlin, Referee in Bankruptcy. On October 13, 1948, DeLaney was appointed trustee and duly qualified as such. He immediately took possession of, and, in accordance with an order of the court, sold such fixtures and merchandise free and clear of liens and incumbrances for $2,099.68. The sale was confirmed October 29, 1948.

On March 1, 1947, the Whites filed their joint tax schedule for 1947 showing merchandise of the value of $18,000, being the average value for the preceding 12 months, and fixtures of the value of $410. A tax was duly assessed against such property by an ordinance enacted by the City on December 11, 1947, at the rate of 49.62 mills on the dollar, or a total tax of $913.67. On March 1, 1948, a tax schedule for 1948 was filed for the Whites, showing merchandise of the value of $8,900, being the average value for the preceding 12 months, and fixtures of the value of $410. A tax was duly assessed against such property by an ordinance enacted by the City on December 11, 1948, at the rate of 50.019 mills on the dollar, or a total tax of $475.73. The taxes assessed for each of such years remain unpaid. No distraint warrant for the collection of such taxes was ever issued and the City did not take possession of any of such fixtures and merchandise prior to adjudication, or at all.

Notice of the first meeting of creditors to be held on October 13, 1948, was duly given, and the Manager of Revenue of the City received a copy of such notice. The City did not file a notice of its liens "with the court," in accordance with the provisions of § 67, sub. b of the Act of June 22, 1938,[2] 11 U.S.C.A. § 107 sub. b. No wage claims were filed against the bankrupt estate.

The City did not file a claim for taxes. However, on June 2, 1949, the City, acting through its Manager of Revenue, filed an intervening petition in the bankruptcy court in which it asserted its liens for such taxes against the proceeds derived from the sale of the fixtures and stock of merchandise. In such petition it disclaimed any claim against the general assets of the Whites and prayed for an order directing the trustee to satisfy out of the proceeds of the sale its tax liens, with interest. The referee denied that petition. On petition for review, the United States District Court for the District of Colorado, Judge Carl A. Hatch, sitting by assignment, reversed the order of the referee and directed the

1. Hereinafter called the City.

2. Hereinafter called the Chandler Act.

trustee to satisfy the tax liens, with interest accruing thereon, after first paying the debts specified in clauses (1) and (2) of subdivision a of § 64 of the Chandler Act, 11 U.S.C.A. § 104, sub. a (1, 2).

The trustee has appealed.

Section 57, subs. e, h, and n of the Chandler Act, 11 U.S.C.A. §§ 93, subs. e, h, and n, provide:

"e Claims of secured creditors and those who have priority may be temporarily allowed to enable such creditors to participate in the proceedings at creditors' meetings held prior to the determination of the value of their securities or priorities, but shall be thus temporarily allowed for such sums only as to the courts seem to be owing over and above the value of their securities or priorities."

"h The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

"n Except as otherwise provided in this Act, all claims provable under this Act, including all claims of the United States and of any State or subdivision thereof, shall be proved and filed in the manner provided in this section. Claims which are not filed within six months after the first date set for the first meeting of creditors shall not be allowed: *Provided, however,* That the court may, upon application before the expiration of such period and for cause shown, grant a reasonable fixed extension of time for the filing of claims by the United States or any State or subdivision thereof: * * * *And provided further,* That a claim arising in favor of a person by reason of * * * the avoidance by the trustee of a lien held by such person, may be filed within thirty days from the date of such * * * avoidance, * * *."

The trustee contends that the City was required to file a proof of claim for taxes under the provisions of § 57, sub. n, supra, within the time limited by such section, or an extension of such time granted by the court, and having failed to so file its claim, lost its liens for taxes.

Prior to the enactment of § 57, sub. n of the Chandler Act, claims for taxes did not need to be proved and filed, but were governed by § 64, sub. a, 11 U.S.C.A. § 104, sub. a, which required the trustee to pay all taxes legally due and owing without distinction between the state and federal government. However, the bankruptcy court could issue a bar order requiring a state or the United States to file its tax claims within a certain period or be barred from participating in the estate.[3] By § 57, sub. n of the Chandler Act, tax claims were removed from their former favored position and tax claims, as distinguished from tax liens, must now be proved and filed in the manner provided in § 57 of the Chandler Act.[4]

Section 64 of the Chandler Act, as amended, 11 U.S.C.A. § 104, in part provides:

"§ 104. Debts which have priority

"(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; the fees for the referees' salary fund and for the referees' expense fund; the filing fees paid by creditors in involuntary cases; where property of the bankrupt, transferred or concealed by him either before or after the filing of the petition, shall have been recovered for the benefit of the estate of the

---

3. Collier on Bankruptcy, 14th Ed., Vol. 3, Par. 57.30, pp. 327, 328.

4. Remington on Bankruptcy, 4th Ed., Supp., Vol. 6, § 2808; Collier on Bankruptcy, 14th Ed., Vol. 3, Par. 57.30, p. 328; Saper v. City of New York, 2 Cir., 168 F.2d 268, 270.

bankrupt by the efforts and at the cost and expense of one or more creditors, the reasonable costs and expenses of such recovery; the costs and expenses of administration, including the trustee's expenses in opposing the bankrupt's discharge, the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases and to the bankrupt in voluntary and involuntary cases, as the court may allow; (2) wages not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen, servants, clerks, or traveling or city salesmen on salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt; * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: * * *."

█ But, priority under that section does not refer to liens existing on the bankrupt's property, nor to the order of payment of such liens, but to the order of payment of debts out of the general assets of the estate after the satisfaction of valid liens.[5] Claims for taxes secured by valid liens, like other valid liens, must be satisfied out of bankrupt's estate before any distribution begins under § 64, supra, subject however, to the provisions of § 67, sub. c of the Chandler Act, which provides for postponement in payment of certain tax liens to the debts specified in clauses (1) and (2) of subdivision a of § 64, supra.[6]

Section 67, subs. b and c of the Chandler Act, 11 U.S.C.A. § 107, subs. b and c, read as follows:

"b. The provisions of section 60 of this Act to the contrary notwithstanding, statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons, and statutory liens for taxes and debts owing to the United States or any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition in bankruptcy or of the original petition under chapter 10, 11, 12, or 13 of this Act, by or against him. Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court.

"c. Where not enforced by sale before the filing of a petition in bankruptcy or of an original petition under chapter 10, 11, 12, or 13 of this Act, though valid under subdivision b of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or subdivision thereof, on personal property not accompanied by possession of such property, and liens whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act, and, except as against other liens, such liens for wages or for rent shall be restricted in the amount of their payment to the same extent as provided for wages and rent respectively in subdivision a of section 64 of this Act."

Here, the City asserts no general claim for taxes and no right to participate in the distribution of the bankrupt estate to unsecured creditors, but relies entirely upon its asserted liens. If the City had valid

---

5. Remington on Bankruptcy, 4th Ed., Vol. 6, § 2839; City of Dallas v. Ryan, 5 Cir., 62 F.2d 959, 960; City of Dallas v. Crippen, 5 Cir., 171 F.2d 526, 529; Ingram v. Coos County, Or., 9 Cir., 71 F.2d 889, 890; In re Pennsylvania Central Brewing Co., 3 Cir., 114 F.2d 1010, 1012.

6. Remington on Bankruptcy, 4th Ed., Supp., Vol. 6, § 2811.50; City of Dallas v. Crippen, 5 Cir., 171 F.2d 526, 529.

liens for the taxes for the years 1947 and 1948, the assets passed to the trustee subject to such liens.[7]

▮ A lien claimant may pursue one of three courses: (1) he may prove his claim as an unsecured claim and surrender his security; (2) he may prove his claim as a secured claim, give credit thereon for the value of the security, and share in the general assets as to the unsecured balance; or; (3) he may not file a claim at all and rely solely upon his lien.[8]

▮ The proof in bankruptcy of a claim as secured implies that the creditor desires primarily to avail himself of his security and to share in the general assets on the basis of the unsecured balance. Only on account of and with respect to his share in the general assets as to the unsecured balance, is it necessary to file a proof of claim.[9]

▮ If the lien claimant elects either optional course (1) or (2), he must file and prove his claim in accordance with the provisions of § 57 of the Chandler Act. If he elects optional course (3), he need not file a formal claim. The filing of a formal claim in bankruptcy is not essential to the preservation of a lien.[10]

▮ However, after the jurisdiction of the bankruptcy court has attached to the security, the lien claimant may assert his claim to such security or to the proceeds derived from the sale thereof, only in the bankruptcy court.[11] A lien claimant may set up his claim to security in the possession of the trustee on the form prescribed for proof of secured claims. But, such forms are intended for secured creditors who desire to retain their securities, have the value thereof credited on their claim, and have a general claim allowed for the balance; and the better practice, therefore, is to set up a claim of lien upon security in the possession of the trustee by

**7.** Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658, 661; Reconstruction Finance Corporation v. Cohen, 10 Cir., 179 F.2d 773, 776; Merchants' & Mechanics' Bank v. Sewell, 5 Cir., 61 F.2d 814; In Collier on Bankruptcy, 14th Ed., Vol. 4, Par. 67.20, p. 157, the authors state: "In summary it can be said that under the Act of 1898 any lien, consensual or non-consensual, which was valid under applicable lien law remained valid in bankruptcy unless invalidated by some specific provision of the Act. This principle also governs under the Act of 1938, although by expansion of certain invalidating provisions of the Act, notably § 60 on preferences and § 67d on fraudulent transfers, many liens that would have withstood bankruptcy under the Act of 1898 are now invalidated by the Act of 1938. And under the Act of 1898 all liens valid in bankruptcy had precedence over unsecured claims entitled to priority under § 64, *only after the discharge of such liens were assets available for distribution, first to priority claimants, and second to other unsecured creditors having no priority. This general principle remains true under the Act of 1938*, subject to the fact that § 67c subordinates statutory liens under certain circumstances to debts having first and second priority under § 64." *(Emphasis ours.)* See, also, City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399, 401.

**8.** Collier on Bankruptcy, 14th Ed., Vol. 3, Par. 57.07, pp. 149–157; United States National Bank v. Chase National Bank, 331 U.S. 28, 33, 34, 67 S.Ct. 1041, 91 L.Ed. 1320.

**9.** Collier on Bankruptcy, 14th Ed., Vol. 3, Par. 57.07, p. 153; Courtney v. Fidelity Trust Co., 6 Cir., 219 F. 57, 63; In re Winner-Franck Baking Co., D.C.Pa., 58 F.2d 409, affirmed, Schug v. Caldwell, 3 Cir., 61 F.2d 1039; Fish v. East, 10 Cir., 114 F.2d 177, 201.

**10.** Collier on Bankruptcy, 14th Ed., Vol. 3, Par. 57.07, p. 157; Remington on Bankruptcy, 4th Ed., Supp., Vol. 6, § 2808; Fish v. East, 10 Cir., 114 F.2d 177, 201; Weekley v. Oil Well Supply Co., 4 Cir., 12 F.2d 539, 540–541; Bolling v. Bowen, 4 Cir., 118 F.2d 59, 62; In re Cherokee Public Service Co., 8 Cir., 94 F.2d 536, 538; Ward v. First National Bank of Ironton, Ohio, 6 Cir., 202 F. 609, 612; Courtney v. Fidelity Trust Co., 6 Cir., 219 F. 57, 63.

**11.** Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 737, 738, 51 S.Ct. 270, 75 L.Ed. 645; United States National Bank v. Chase National Bank, 331 U.S. 28, 33, 34, 67 S.Ct. 1041, 91 L.Ed. 1320; Fish v. East, 10 Cir., 114 F.2d 177, 201.

an intervening petition filed in the bankruptcy proceeding.[12]

Accordingly, we conclude that the City properly and timely asserted its claim of liens by the filing of its intervening petition in the bankruptcy proceeding.

Section 3 of Ch. 142, '35 C.S.A., Vol. 4A, provides that all taxes shall be levied for the fiscal year which shall end November thirtieth.

Section 291 of such Chapter provides for the levy, on or before the second Tuesday in December of each year, on the value fixed by the assessor, of the requisite taxes for the year.[13]

Section 4 of such Chapter provides: "The lien of general taxes for the current tax year shall attach to all property, real and personal, not exempt by law, on the first day of March, at twelve o'clock meridian, in each year."

"Section 3 of such Chapter provides that " * * * Taxes levied upon any real estate shall be a perpetual lien upon such real estate, until such taxes and any penalty, charges and interest which may accrue thereon shall be paid, and such lien shall have priority over all other liens * * *."

Section 197 of such Chapter, in part, provides: "(a) All taxes levied or assessed upon personal property of any kind whatsoever shall be and remain a perpetual lien upon the property so levied upon, until the whole amount of such tax is paid; * * *."

Section 201 of such Chapter provides: "The perpetual lien imposed upon personal property in all cases of taxes assessed and levied upon merchandise shall extend to and hold any stock of merchandise held by the person or persons taxed while engaged in the business of merchandising, whether such stock is the identical stock assessed or taxed, or contains articles which have been added thereto after such assessment or levy."

It will be observed that the taxes for the year 1947 were assessed and levied prior to the adjudication in bankruptcy and that the taxes for 1948 were assessed and levied after the adjudication in bankruptcy.

The trustee contends that the City, in order to perfect its liens, was required to file a notice of such liens with the bankruptcy court in accordance with § 67, sub. b, supra.

In Milliken v. O'Meara, 74 Colo. 475, 222 P. 1116, the court held that the statutory lien came into being without execution or distraint by virtue of the provision of C. L. § 7375, which was substantially identical with the portion of § 197 above quoted.

In City and County of Denver v. Tax Research Bureau, 101 Colo. 140, 71 P.2d 809, 812, the court passed on the question of whether or not the inchoate lien which arose on March first of the tax year could be perfected by an assessment thereafter, where, before the assessment was made, the property acquired a tax-exempt status. The court said: "It is our conclusion that the lien provided for by chapter 142, section 4, C.S.A. 1935, supra, does not become effective until the property is assessed and

12. Remington on Bankruptcy, 4th Ed., Vol. 6, § 2599; Remington on Bankruptcy, 4th Ed., Vol. 5, § 2485; Bolling v. Bowen, 4 Cir., 118 F.2d 59, 62; American Nat. Bank of Sapulpa v. Harris, 10 Cir., 84 F.2d 181, 183; Fish v. East, 10 Cir., 114 F.2d 177, 201; Weekley v. Oil Well Supply Co., 4 Cir., 12 F.2d 539, 540, 541. In the case last cited, the court said: "So far as claiming a lien on property in the possession of the trustee is concerned, the filing of a claim secured or unsecured has in reality nothing whatever to do with this. The lien claimant 'is not even required to file a formal proof of claim, though, where the trustee has taken possession of the property and sold it, he may file a petition to obtain the proceeds of the lien in the hands of the trustee.' Sanford, J., in Re North Star Ice & Coal Co., D.C., 252 F. 301. It is allowable practice to claim a lien on property in possession of the trustee by allegation incorporated in proof of secured debt. * * *. The better practice, however, is to file an intervening petition."

13. Under the charter of the City, the levy is made by the City Council and the Manager of Revenue performs the functions of City Assessor and County Treasurer.

the taxes levied, at which time the theretofore inchoate lien relates back and attaches as of April first of that year. If, before the lien so attaches, the specific property legally assumes a tax exempt status, the doctrine of relation does not function."

■ It follows, we think, that the inchoate lien for the taxes for 1947 which came into being on March 1, 1947, became perfected when the levy was made by the passage of the tax-levying ordinance on December 11, 1947, prior to bankruptcy, and that the inchoate lien for taxes for 1948 which came into being on March 1, 1948, became perfected when the levy was made by the passage of the tax-levying ordinance on December 11, 1948. While the perfection of the inchoate lien for the taxes for 1948 was subsequent to the adjudication in bankruptcy, the lien was perfected by the assessment of the property and the passage of the tax-levying ordinance, in accordance with the requirement of the laws of Colorado, and it is a valid lien, under the provisions of § 67, sub. b of the Chandler Act. The filing of a notice of the lien with the bankruptcy court was not required by such § 67, sub. b, since the laws of Colorado did not require such lien to be perfected by the seizure of property.

By virtue of the provisions of § 201 of Chapter 142, supra, the liens attached to articles which were added to the stock of merchandise after the assessment and covered the stock of merchandise and fixtures which came into the possession of the trustee.

Section 15 of Chapter 142, supra, provides that if on March first of any year one-half of the taxes for the preceding year has not been paid, there shall be taxed against such one-half a penalty of one-half

of one per cent per month from March first to August first, and that on August first all unpaid taxes for the preceding year shall become delinquent and that there shall be assessed against such unpaid tax a penalty of two-thirds of one per cent per month for each month or fractional part thereof from such August first until paid.

The remaining question is whether such liens covered and secured such penalties.

It will be noted that § 3 of Chapter 142, supra, in providing a lien for real estate taxes expressly provides that the lien upon real estate for the taxes assessed thereon shall secure not only the taxes, but the penalty, charges, and interest which may accrue thereon, whereas § 197 of Chapter 142, supra, in providing a lien for personal property taxes only provides that it shall secure the whole amount of the tax. The omission of the words "penalty, charges and interest" in the latter section is significant, and, at least, creates doubt as to whether the legislature intended the lien for personal property taxes to include penalties and interest.

■ Where the intent or meaning of a tax statute is doubtful, it will be construed most strongly against the government and in favor of the taxpayer.[14] The foregoing rule of construction has been applied to statutes providing for tax liens, such liens are not to be extended by implication or enlarged by judicial construction.[15]

■ Absent a statutory provision plainly providing the contrary, a tax will be regarded as distinct from either interest or penalty accruing on delinquent taxes, and neither interest nor a penalty will be regarded as a legal incident to a tax. Penalty is a sanction imposed to compel timely

14. Bedford v. Johnson, 102 Colo. 203, 78 P.2d 373, 375; City and County of Denver v. Tax Research Bureau, 101 Colo. 140, 71 P.2d 809, 814; Gomer v. Chaffee, 6 Colo. 314, 317; 51 Am.Jur., Taxation, § 316, p. 366.

15. Collector of Taxes of City of Boston v. Revere Building, 276 Mass. 576, 177 N. E. 577, 578; Miller v. Anderson, 1 S.D. 539, 47 N.W. 957, 959; Farm & Cattle Loan Co. v. Faulkner, 34 Wyo. 199, 242 P. 415, 417; J. I. Case Threshing Machine Co. v. Bentson, 57 S.D. 244, 231 N. W. 948, 950; McKennon v. Warnick, 115 Or. 163, 236 P. 1051, 1052; McNamara v. City of Rochester, 124 Misc. 229, 207 N.Y.S. 360, 362; Bibbins v. Clark, 90 Iowa 230, 57 N.W. 884, 885; 51 Am.Jur., Taxation, § 1010, p. 882.

payment. Interest is compensation for delay in payment.[16]

Under the rules of construction set forth above, and the decisions of the Supreme Court of Colorado cited in Note 14, ante, we are forced to the conclusion that § 197 of Chapter 142, supra, does not impress a lien for penalties and interest accruing on taxes assessed against personal property.

Since the City only seeks the enforcement of its liens, and not a claim for taxes and interest and penalties thereon, it follows that the City is not entitled to have the penalties which have accrued on the taxes assessed against the Whites' personal property paid from the proceeds in the hands of the trustee.

The cause is remanded with instructions to modify the judgment in accordance with the views herein expressed.

---

16. State v. Erie R. Co., 42 A.2d 759, 762, 23 N.J.Misc. 203; Burlington County v. Martin, 128 N.J.L. 203, 25 A.2d 17, 18, affirmed, Id., 129 N.J.L. 92, 28 A.2d 116; Seeley Tube & Box Co. v. Manning, D.C. N.J., 76 F.Supp. 937, 938; In re Kent's Estate, 191 Misc. 939, 77 N.Y.S.2d 596, 598; Penrose v. United States, D.C.Pa., 18 F.Supp. 413, 415; United States v. Childs, 266 U.S. 304, 308–310, 45 S.Ct. 110, 69 L.Ed. 299; Owens v. Commissioner, 10 Cir., 125 F.2d 210, 213.